THE NEW JERSEY TITLE GUARANTEE AND TRUST COMPANY, executor of the estate of Charles Arthur Smith, deceased,

*v.*

MARGARET SMITH et al.

[Decided July 17th, 1919.]

1. Where a testator stated in his will that it was his intention and wish that his widow should always be well provided for, the payments of income to her commence from the testator's death.

2. Where a testator provided that a trust fund of $165,000 should be first set apart from his estate, such fund should be established without regard as to whether it comes from his real or personal estate, and where

the testator's legacies far exceed his personal estate at the time of making his will, and also at the time of his death, this implies an intention on his part to charge the pecuniary legacies on his real estate.

3. When a trust fund is established by will, equity will never want for a trustee, and where a person is appointed by the will as "guardian" with the duties of a trustee, it is clear that the testator intended that he should perform the duties of a trustee, and the executor of the will may safely pay him the income of the trust fund.

4. The executor, being so authorized by the will, may pay principal as well as income for the support and maintenance of the widow, when in the judgment of both the executor and guardian it is necessary to do so.

5. Where the will provides that transfer taxes be paid by the executor, and also that a trust fund of $165,000 be created, this fund should not be diminished by the payment of transfer or inheritance taxes.

6. A gift of $15,000 upon trust to erect and maintain a building in Forked River to be used for the benefit of the inhabitants thereof is a charitable gift.

7. Where the residue of the estate is bequeathed and devised to an executor in trust, if necessary to carry out the provisions of the will, this works a conversion of the real estate into personalty, especially where there is a power of sale in the executor.

---

On bill, pleadings and proofs.

*Mr. Gilbert Collins,* for the complainant.

*Mr. Theodore Rurode,* of counsel with Mr. George W. Rurode, guardian, defendant.

*Messrs. Vredenburgh, Wall & Carey,* for the defendant Margaret Smith.

LEWIS, V. C.

The bill seeks the construction of the will of Charles Arthur Smith upon the following questions: (1) Whether the income payable to Margaret Smith, the widow, is to be paid from the date of the testator's death, or only after one year from his death. (2) Whether the real estate is charged with the payment of pecuniary legacies. (3) As to the status of George W. Rurode, who is designated as guardian of Margaret Smith, the

widow. (4) Whether the executor can safely pay to George W. Rurode the income on the trust fund for the benefit of the widow. (5) As to the executor's duty in regard to the payment of principal for support and maintenance of the widow. (6) Out of what fund the inheritance tax on the trust fund is payable. (7) As to the bequest in the thirteenth paragraph of the will for the benefit of the inhabitants of Forked River. (8) As to the bequest in the nineteenth paragraph of the will for the benefit of the Toms River Hospital.

(1) The intention of the testator, who provided substantially for his widow, is clear. He said: "It is my intention and my wish that she shall always be well provided for and maintained." It would be absurd to hold that such provision and maintenance should be withheld for a period of a year following the testator's death; for, in that time, through lack of funds, or proper attention and care, the widow might herself have passed away. I have no hesitancy, therefore, in construing this provision of the will in accordance with what I thus take to be the testator's clear intention; and the income on the trust fund of $165,000 for the benefit of the widow should be paid from the date of the death of the testator.

(2) I also feel that there can be no real question as to the testator's intention that if the personal estate is insufficient to produce the trust fund of $165,000, created for the benefit of the widow, that then the additional amount necessary should be raised from the real estate. By the first article of the will, the testator directs the executor to set aside "such part of my estate to the amount of $165,000." By the twelfth article he says:

"In the event that my estate shall not be sufficient to pay the legacies herein bequeathed, I then direct that my executor shall first set apart the sum of $165,000 mentioned in the first clause of my will, and the remaining legacies shall be reduced *pro rata.*"

In the first article the testator also shows that he wanted his widow to be supported as he had been supporting her, even if it were necessary to use the principal of the trust fund. He says: "She shall always be well provided for and maintained," and

that she should always be supported "as she is now being maintained and supported by me;" and further, "as I am now supporting her and maintaining her."

It seems entirely clear, therefore, that the testator's intention was to raise the fund of $165,000, mentioned for the benefit of his widow, regardless of whether it came from his personal estate or from his real estate, in the event of the personal estate being insufficient for that purpose.

I, therefore, so construe the will in this respect.

The legacies far exceeded the value of the personal estate, not only at the time of the testator's death, but at the date of the execution of his will, and the residuary clause disposes of the real and personal property in a blended mass. This implies an intention on the part of the testator to charge the pecuniary legacies on the real estate, if the personal estate is insufficient to pay them. It follows that the real estate should be charged with the payment of the pecuniary legacies.

(3) The testator was deeply solicitous of the welfare of his wife. Mr. George W. Rurode was a close friend in whom he reposed great confidence. It was his specific desire that Mr. Rurode should be entrusted with the care of Mrs. Smith, the testator's wife, after his death. It seems to me to be immaterial by what name he designated the person whom he desired to take care of his widow, when he himself was no longer able to do so. It is easy to understand how a man in his position, whose wife has been ill, and for a time in a sanitarium, should be thus specially desirous of selecting some personal friend in whose ability and personal integrity he had full confidence to exercise this delicate and important trust. There can be no doubt of the effective creation of the trust fund for the benefit of the widow; and there is no doubt, in my mind, but that the testator intended Mr. George W. Rurode to be the trustee. In the light of the well-known rule that "equity will never want for a trustee," where a trust is clearly established, I would have no hesitancy in holding, in the event of the testator's having failed to effectively designate a trustee, that a trustee should now be appointed to carry out the terms of the trust which unquestionably has

been created by the testator in this case; and it would be a simple matter to appoint as the trustee Mr. George W. Rurode, the person designated by the testator as "guardian;" but I feel that this is unnecessary, because, in my judgment, the testator clearly intended that Mr. Rurode should be such trustee; and that his designation of him as "guardian" was due to the layman's natural misuse of technical terms and misapplication of the niceties of legal phraseology.

(4) It follows, again, that the executor, therefore, can safely pay to George W. Rurode the income from the trust fund for the benefit of the widow; and

(5) That it is the executor's duty to make payment of the principal as well as the income, for the support and maintenance of the widow if, or when, in the concurrent judgment of the executor and trustee, it may be necessary; the testator's will in this respect, providing that such action be taken, "if at any time it may be necessary in the judgment of both my executor and guardian of my said wife to use any part of the principal of said sum of $165,000."

(6) The testator, by the twenty-third article of the will, directs his executor to pay all transfer or inheritance taxes imposed on the principal sum of $165,000. In the twelfth article the testator provides that if there is not enough to pay the legacies, he desires the $165,000 fund to be first set aside for the benefit of his widow and the remaining legacies reduced *pro rata*.

The testator's intention to create a trust fund of $165,000 net is plain, from these and other provisions of the will already considered.

I am, therefore, of the opinion that this fund should be undiminished by the payment of transfer or inheritance taxes, and that such taxes should be paid out of the general estate.

(7) This involves a bequest of $15,000, upon trust, to erect and maintain a building in Forked River, to be used for the benefit of the inhabitants thereof; and falls within the general definition of a charity as "a gift to be applied consistent with existing laws for the benefit of an indefinite number of persons,

either by bringing their minds or hearts under the influence of education or religion; by relieving their bodies from disease, suffering or constraint; by assisting them to establish themselves in life; or by erecting and maintaining public buildings or works, or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself or if it be so described as to show that it is charitable in its nature." *Mackenzie* v. *Trustees, 67 N. J. Eq. 652* (at *p. 655*).

Whether or not Forked River is incorporated as a municipality is immaterial. The bequest is to a trustee for the benefit of the inhabitants of Forked River, and the beneficiary is sufficiently designated to admit of identification without doubt or difficulty.

I think, therefore, that the provisions of the will in this respect should be carried out as directed by the testator.

(8) The residue of testator's estate, both real and personal, is bequeathed and devised to the executor, in trust. If necessary to carry out the provisions of the will, this works a conversion of the real estate into personalty, and especially is this true where there is a power of sale in the executor, which is equivalent to an imperative direction to sell, and causes equitable conversion.

It seems plain, therefore, that the bequest to the Toms River Hospital is a gift of personalty. The fact that this hospital is unincorporated is immaterial, it being clearly capable of identification, and able to take an unconditional gift of personalty. The proof establishes that it is managed by the board of directors and that its objects are of a charitable nature.

I think, therefore, that the provisions of the will in this respect should also be carried out as directed by the testator.

I will advise a decree in accordance with these views.