Helen S. Estey et al., Appellants, v. Commerce Trust Company, Trustee under will of James W. Weed et al.—64 S. W. (2d) 608.

Division One, October 19, 1933.*

*NOTE: Opinion filed at May Term, 1933, August 24, 1933; motion for rehearing filed; motion overruled at September Term, October 19, 1933.

978

*Omar E. Robinson* for appellants.

*James E. Goodrich, Wm. Bush* and *Hugh M. Hiller* for respondents.

STURGIS, ·C.—This is a suit to construe the will of James W. Weed, deceased, and more particularly to determine whether the income derived from the residuary estate during the time the estate was in the process of administration by the executor in the Probate Court of Jackson County, Missouri, should be paid to the life tenants for their support and· maintenance or become part of the residuary estate, the income of which goes to the life tenants. The life tenants are the plaintiffs here and the Commerce Trust Company, who is both executor of the will and trustee of the residuary estate, is de-

fendant, joined with certain persons who are interested in the remainder. When we speak of defendant, we mean Commerce Trust Company.

James W. Weed, whose will and estate gives rise to this controversy, died testate in Kansas City, Jackson County, Missouri, on July 28, 1927, leaving an estate, mostly personal, of the approximate value of $138,000. The testator by his will, duly admitted to probate soon after his death, provided that his debts and funeral expenses be paid by his executor, made a few specific legacies of little value and as to which there is no controversy, and then disposed of practically his entire estate by this clause:

"Fifth. All the rest, residue and remainder of my estate, whatsoever, real, personal and mixed, wherever situate and in whosesoever possession the same may be found, and whether the same be a present, future or contingent estate, I give, devise and bequeath to the Commerce Trust Company, a corporation of Kansas City, Missouri, to be by it held in trust with full power and authority." (Such power and authority being set forth in the clauses which follow.)

Large and almost unlimited authority is given to the trustee in handling the estate, retaining any property or securities owned by testator at his death, selling, conveying, loaning, investing and reinvesting the property of the estate, selling and purchasing bonds, notes and securities, etc., including these clauses:

"(g) To collect, receive and receipt for any and all income that may be derived from the property placed under the terms hereof or from the investment or reinvestment of the proceeds thereof, and to pay out of said income before any distribution, or out of the principal, if at any time it be necessary, all taxes and costs of administration, including reasonable compensation to the trustee for its services, and all costs and expenses, which in the discretion of the trustee may be necessary and/or advisable to incur for the preservation, maintenance and protection of the trust property. . . .

"(j) To make division or distribution of the trust estate as and when it is required under the provisions of this will, in kind—that is to say—in real estate, stocks, bonds, mortgages or other securities belonging to the trust estate, and such property so distributed shall be at such valuations as the trustee may establish therefor."

As to the disposition to be made of the income derived from the trust estate and the *corpus* of such estate on the termination of the trust, the will provides:

"Sixth. The income derived from the trust estate, together with the principal or *corpus* thereof, shall be held, handled, used, divided and distributed by the trustee as follows, to-wit:

"(a) The net income derived from my three houses, located at 3128, 3134 and 3136 Chelsea Avenue, Kansas City, Missouri, or from the proceeds of the sale of said houses, if the trustee shall sell one or

more of said houses, shall be paid by the trustee to my daughter, Helen S. Estey, so long as she shall live, or should my said daughter desire to use any one of said houses as a home, she shall have the right to do so, and said trustee shall not sell said house used by her .as a home so long as she chooses to use it as a home. Upon the death of my said daughter, the income from said houses shall be held, handled, used, divided, and distributed as hereinafter provided for the. distribution of the remaining income from this trust estate.

. ''(b) The remainder of the income derived from the trust estate shall be divided into three equal parts; one of said parts shall be paid over and delivered. to my daughter, Blanche McLaughlin, who now lives in Rupert, Idaho; one part shall be paid over and delivered to my daughter, Helen S. Estey, of Kansas City, Missouri; and one part shall be paid over and delivered to my daughter-in-law, Rena Weed, of Lawrence, Kansas.'' (Note: It is this clause of the will especially which gives rise to this controversy and which the court is called on to construe.)

The remaining portions of this provision of the will provide for the disposition of the income in case of the death of any one or more of these three life tenants, to the general effect that same shall be used to support and educate the children and lineal descendants of each, and the final distribution of the trust estate to be made to the lineal descendants of such life tenants when all three of the life tenants are dead and all their children are of the age of twenty-one. We are not attempting to state these provisions in detail or perhaps accurately, except when. quoted, as they are not in controversy. The will then nominates and appoints the defendant Commerce Trust Company executor of the estate.

The record shows that the executor named qualified as such in the probate court, administered the estate and made final settlement of its administration on June 26, 1929, approximately twenty-two months after taking charge of the estate as executor. The executor then, in form at least, delivered the residue of the estate to itself as trustee, although the testator by his will gives, devises and bequeathes the rest, residue and remainder of the estate, other than the specific legacies, to the same person as trustee as is named executor, and the Commerce Trust Company was acting both as trustee and executor of the will during this period of administration.

All the facts of the case were agreed upon at the trial and no evidence was introduced otherwise by either party. The trial court made a formal finding of the facts, as agreed upon by the parties, to the effect that at the time the will was executed the three persons named as life tenants of the income of the estate bequeathed to the defendant as trustee, Helen S. Estey and Blanche McLaughlin, daughters of the testator, and Rena Weed, his daughter-in-law, were in indigent circumstances and largely dependent on the testator

for the support of themselves and their children, two of them being then widows and one in ill health; that the testator for several years had extended financial assistance to them and was at all times concerned in their welfare.

The court further found that during the year immediately following the death of the testator there accrued as income from the trust estate the sum of $3800.55 and that under the law said income belonged to and was the property of the life tenants, Helen S. Estey, Rena Weed and Blanche McLaughlin; that during the remaining period of the administration there accrued as income on said trust estate the further sum of $3759.33 and that all of said income, together with interest at six per cent per annum, became the property of and belonged to said life tenants, and that plaintiffs were entitled to recover of and from the defendants, the executor and residuary legatees the sum of $7559.88, which, with interest, at the time the case was tried, amounted to $8566.68.

The court further found that the respondent Commerce Trust Company was required to pay and lawfully did pay the expenses of administration, to-wit: Executor's fee of $4871.96, and the further sum of $1200 allowed by the probate court to the administrator *pendente lite,* occasioned by a contest of the will of James W. Weed, deceased, then pending in the Circuit Court of Jackson County, Missouri; and the further sum of $204 as court costs; and that the executor further paid the sum of $56 as premium on the purchase of certain bonds which the deceased had contracted and obligated himself to purchase prior to his death; that the executor was required to and did pay the further sum of $51.25 in making necessary repairs on the real estate conveyed to it in trust by said will, and the further sum of $68.21 for insurance on the farm buildings located upon said real estate belonging to deceased; that the executor paid the following items of taxes:

| | |
|---|---:|
| Federal Income Tax for the year 1928, | $ 40.44 |
| General Personal Property Tax assessed by the city of Kansas City for the year 1928, | 542.85 |
| Certain Special Parkway Taxes, | 9.34 |
| General Real Property Tax assessed by Kansas City for the year 1928, | 82.97 |
| General Personal Property Tax for 1929, | 366.60 |
| General State and County Personal Property Tax for the year 1929, | 537.00 |
| Stock Transfer Tax, | 8.00 |
| State Income Tax for 1928, | 19.26 |
| Making a total of | $1606.46 |

The court found that the total expenditures so made by the executor during the administration of the estate amounted to $8050.28,

which sum, together with interest thereon, exceeded the income accruing during the administration. The court then found that all the payments so made were proper charges *against the income* accruing on said estate during the period of administration, and that the executor was within its rights in making such payments for the purposes stated, and that such payments should be deducted from said income.

The court entered judgment that plaintiffs, the life tenants of the income, have and take nothing by their petition, and that the defendant Commerce Trust Company have and recover its costs in this behalf expended. The plaintiffs filed their motion for new trial, which was overruled, and they have brought the case here by appeal.

The case is denominated "action to construe will" and the petition, after stating who the parties to the suit are and their relation to each other and to James W. Weed, testator, who died testate and whose will was duly probated, alleges that said Commerce Trust Company acted as executor for twenty-two months and then on June 26, 1929, made final settlement of such estate and "said executor was then and there finally discharged as such" (this was a month before this suit was filed) ; that at the time the executor trust company was discharged it was ordered to and did deliver to itself as trustee under said will "all and singular the assets of said trust estate then remaining and being in its hands as executor," and that said trust company received and took into its possession all of said assets as trustee and now has and holds the same as trustee under the will. It is then alleged that "during the administration of the estate there accrued to the executor $7559.88 in income arising from the assets which had by said will been conveyed in trust to the said trustee, which sum the executor had collected and held at the time it made final settlement of said estate as aforesaid; that said Trust Company as executor delivered same to itself as trustee and said Trust Company as trustee now has in its possession the sum of $6897.67, the income arising from said trust assets during the administration of said estate."

The petition then alleges that no part of the income arising from the trust assets has been paid or distributed to the beneficiaries thereof (the plaintiffs) "for the reason that said Commerce Trust Company, as trustee, has expressed doubt as to the disposition of said income, that is to say the said Commerce Trust Company avers that it is unable to determine whether said income shall be distributed to the life tenants under subdivision 'b' of paragraph 6 of said will, or whether said income so arising shall go to and become part of the *corpus* of said estate, and for the reason so given said Commerce Trust Company has refused to pay said income to the life tenants, namely, Blanche McLaughlin, Helen S. Estey and Rena Weed (plaintiffs)."

It is then alleged that obviously the testator intended to give his

daughters continued and uninterrupted support during their lifetime, but that "while said will does not expressly state that the said life tenants should have and enjoy said income from the trust estate from and immediately following the date of his death, it is in the opinion of these plaintiffs apparent that the testator so intended."

The prayer of the petition is that "the court construe the will of the deceased, James W. Weed, and determine therefrom the intention of the testator as to *when* and *from what date* the income arising from the trust estate shall be paid to the plaintiffs, and determine whether the testator intended any of said income so accruing from and after the death of the testator should be added to and become a part of the principal of said trust estate; that the court will by its judgment and decree define the duty of the trustee in the premises, and direct said trustee to pay to said life tenants of said income (plaintiffs) the said sum of $7559.88 and interest thereon, at six per cent, which accrued from the estate of the deceased, James W. Weed, *pending administration* of said estate, and that the court will make such further orders as to it shall seem meet and proper, the premises considered."

The defendants' answer, while denying all the allegations of the petition except as specifically admitted, yet specifically admits practically all such allegations. It then avers that under the statutes of Missouri the defendant trust company *as trustee* had no right, title or interest in the property bequeathed till one year after it qualified as executor, and denied that it as trustee received any income from the trust estate, except the real estate, prior to such one year period; that it has made disposition of the rents from the real estate as directed by the will and that the *income of the personal property* received during the administration was kept by the executor and mingled with and became part of the principal or *corpus after payment of debts and costs of administration,* "and the amount received by this defendant upon distribution made by said executor *constitutes the trust estate* bequeathed under the terms of said will to this defendant as trustee." It will be noticed that it is averred that the amount received by defendant trust company from itself as executor on its settlement as such constitutes the trust fund in its hands as trustee, and that the income of the personal estate received by the executor during its administration was mingled with and became part of the principal "after payment of the debts and costs of administration," but it is not stated what debts and costs of administration were paid by the executor before making its settlement. Said answer then states that "said defendant admits that the *executor* received from said trust estate income amounting to the sum of $7559.88, as alleged in plaintiffs' petition, but this defendant alleges that said income was used *by the executor* in the payment of costs and expenses of the administration of said estate."

The answer then alleges that the "costs of administering the estate of the deceased in the Probate Court of Jackson County, Missouri, together with the taxes and other expenses of said estate, far exceeded any income received from the estate of the deceased during the period of said administration." The items of such costs and expenses, including the executor's fee of $4871.96 and the fee of the administrator *pendente lite* of $1200, are set out as heretofore enumerated, including items of taxes amounting to $1606.46. Said answer then concludes by averring that *"any income earned by the executor* should be applied to the payment of the taxes upon said estate and necessary repairs required, including insurance, and the *costs and expenses of administering said estate,* and that, applying the income as aforesaid, no part thereof is left for payment to the plaintiffs, without taking the principal of said estate, with which to make said payment to plaintiffs. Wherefore, the premises considered, said defendant denies that plaintiffs are entitled to any income under the terms of the will of deceased, and states that even if plaintiffs were entitled to income under the terms of said will, *no income* was received by the defendant *as trustee* for the reason that *all* of said income was expended by the *executor* as aforesaid."

While the pleadings are somewhat indefinite and contradictory as to when and by whom, whether the executor or trustee, the items of expenditures in question were paid out, as we have stated, the case was tried altogether on admissions made by the parties as to the facts, and in these admissions made at the trial it was admitted that the executor's fee amounted to $4871.96; that the fee allowed to the administrator *pendente lite* by the probate court amounted to $1200, and that the court costs amounted to $204.40. The admission is specific that the *executor* paid the items of repairs $51.25, insurance $68.29, and taxes amounting to $1606.46; and there is this general admission: "It is admitted that the income received during the first year of administration amounted to $3800.55 and that the credits claimed by defendant Commerce Trust Company were all paid out *by said executor* after the close of the first year of administration."

The court's finding of facts incorporated in the judgment is that the *executor,* trust company, was required to pay and lawfully did pay all the items of costs and expenditures in controversy, and that "the aggregate of such payments so made *by the executor* of said estate amounts to $8050.28, which sum, together with interest thereon, exceeds the amount of the income accruing on said estate pending the period of administration." The final conclusion of the court was that all the payments so made "were proper credits against the income accruing on said estate during said period of administration," and, as such payments consumed such income, it left nothing of same to be paid over to the trustee by the executor or payable to plaintiffs.

So far as this case calls for a construction of the will in ques-

tion, it is limited to a construction of clause "b" of the sixth provision, which, after providing what shall be done with the income of three specified houses in Kansas City, provides: "The remainder of the income derived from the trust estate shall be divided into three parts;" one such part to be paid over to each of the three named beneficiaries during her life. As to this clause, the question for decision is whether the income of the trust property to be paid over to the three named persons begins at the death of the testator or does it begin when the executor finishes its administration of the estate, makes final settlement, and relinquishes full possession and control to the trustee. In determining this question it perhaps makes no difference that the same person is both executor and trustee. Plaintiffs maintain, and we think correctly so, in accordance with the great weight of authority, that where a bequest of the use or income of property, whether in the hands of a trustee or not, is given by a will or deed to a person for life, with the remainder over, the right to such use or income begins at the date of the testator's death, unless there is something in the will to show a contrary intent. Where income-producing property, as here, is given by the will to a trustee with directions to pay over the income to named parties, it will be presumed that the testator intended the benefit to begin at once and not to be postponed to a later date, the termination of the administration, unless a contrary intent is made to appear.

Thus in 40 Cyc. 1882, the rule is stated thus: "It is settled by the great weight of authority that in the case of a bequest of a life estate in a residuary fund, or of some aliquot part thereof, if no time is prescribed in the will for the commencement of the interest or the enjoyment of the use or income of such residue, the legatee for life is entitled to the interest or income of the clear residue, as afterwards ascertained, to be computed from the time of the death of the testator."

In 28 Ruling Case Law, 355, the rule is stated in this language: "So where there is the bequest of the whole or of an aliquot part of the residue of an estate to a legatee for life, remainder over, and no time is fixed by the will for the commencement of such life use, the legatee is entitled to the use or income of the clear residue so bequeathed, as the same may be at last ascertained, to be computed from the death of the testator."

In 2 Perry on Trusts (6 Ed.), section 550, note (a), it is said: "The general rule is now well established that when property is devised or bequeathed in trust to pay the income to a person for life or for a limited time, he is entitled to either actual or equitable income from the date of the testator's death, unless the testator has indicated an intention that the enjoyment of the income shall not begin until some later date." [See, also, 3 Woerner, American Law of Admin-

istration, sec. 458, p. 1573; Hawes' American Law Relating to Income and Principal, p. 59.]

The rule, supported by the weight of authority, is well stated in the annotation in 70 American Law Reports, page 637, thus: "A bequest of the residue of the testator's estate, or some aliquot part thereof, in trust to pay the interest or turn over the income to a beneficiary for life, the *corpus* over to another after the beneficiary's death, the life tenant is entitled to rents, issues, profit, or income, unless otherwise provided in the will itself, from the death of the testator, and the beneficiary is entitled to the use or income of the clear residue, as the same may ultimately be ascertained, from the death of the testator. (Cases cited.) This conclusion is not altered by the fact that the income does not become due or payable until after the close of the administration, or that the residue of the estate (the *corpus* of the trust) cannot be determined until the close of administration—the question being merely one of postponement of the enjoyment of the income, as distinguished from the vesting of the right thereto.''

It is not necessary to discuss the reasons given for this rule in various cases, such as that it will be presumed that the testator intended to favor the immediate objects of his bounty rather than those more remote, or that where the object is to provide support and maintenance to favored persons, it will be presumed that the testator intended such benefit to commence as soon as possible. The evidence here furnishes a basis for both presumptions, and the cardinal rule of construction of a will is to ascertain and carry out the testator's intention. Nor is it necessary to cite the many cases supporting this rule as such citations will be readily found in the authorities already referred to. Those interested, however, would do well to read Bank of Niagara v. Talbot, 96 N. Y. Supp. 976, affirmed in 184 N. Y. 576, 77 N. E. 1181; New Jersey Title Guarantee & Trust Co. v. Smith, 90 N. J. Eq. 386, 108 Atl. 16; Lawrence v. Security Co., 56 Conn. 423, 15 Atl. 406; Will of Leitsch, 185 Wis. 257; Bradford, Admr., v. Fidelity Trust Co., 12 Del. Ch. 56; Cushing v. Burrell, 137 Mass. 21.

In re Catron's Estate, 82 Mo. App. 416, the will of Mrs. Catron gave $5000 to a trustee to be loaned out and the net income or interest to be paid to a daughter, Mrs. McFadin, during her life, remainder to her children. The court reviewed the authorities and held that such life tenant of the income was entitled to same from the death of the testatrix and not from a year later when legacies were payable. The court quoted from and approved Eyre v. Golding, 5 Binn. 472, holding: "The devise in the present instance is not of a gross sum, but in the nature of an annuity. There is a difference between a legacy of a sum of money to one for a term of life, and a bequest of a sum to be paid annually for life. In the former case, the legacy,

988

not being· payable till the end of a year from the testator's death, carries no interest for the year. But in the latter, the first payment of the annuity must be made at the end of the first year, or the intention of the testator is not complied with. You must count the time immediately from his death, or the legatee will not receive the annuity annually during her life;'' and from Flickwir's Estate, 136 Pa. St. 374, holding: ''The rule that interest upon legacies does not commence to accrue until one year after the death of the testator, being one of administrative convenience only, gives way at all times to the testator's intent, whether express, or whether implied from the general scheme of the will, . . . or from the situation of the legatee, etc. There is no substantial difference, in legal aspect, between the gift of an annuity for life, and one of the interest or income of a fund for life; nor between the gift simply of interest, and that of interest payable annually; in all these cases, if no actual intent to the contrary appears, the annuity, interest, or income commences to accrue to the legatee at the death of the testator.'' And from a New York case, Matter of Stanfield, 135 N. Y. 292, holding: ''Where the income of an estate, or of a designated portion, is given to a legatee for life, we think it is clear that he becomes entitled to it whenever it accrues; and if the estate is productive of income from the death of the testator, he can require the executor to account to him for the income from that time. The rule that general legacies shall not bear interest until the expiration of one year from the grant of letters testamentary, or of administration, has no application in such a case.'' The Court of Appeals then said: ''From the reason and holding of these authorities we conclude that under the will of Mrs. Catron, her daughter, Mrs. McFadin, became at once, on the death of the testatrix, vested with an absolute title to whatever interest or net income thereafter arose from said $5000.''

The case of In re Holmes' Estate, 328 Mo. 143, 40 S. W. (2d) 616, as we read it, is not in conflict with what we are holding here. In that case, as here, the will devised one-half the ''rest, residue and remainder'' of testatrix' estate to trustees for the use of two daughters of testatrix for life. The estate was administered on by executors, who took charge of the whole estate, collected the income on same during such administration, and paid out of the common fund the legacies, funeral expenses of the testatrix, the claims allowed, state and city taxes, costs of administration, etc., inclusive of what is termed a ''Federal estate tax.'' Objections were made to the settlement of the executors questioning the right of the executors to collect and augment the assets of the estate by adding thereto the income and interest on stocks, bonds, and notes belonging to the estate, and then paying out of the augmented fund the item of Federal estate tax, together with the allowed demands, taxes, legacies, etc. The court held this·to be proper and in this connection said

that the objecting beneficiaries were given a half interest in only the trust estate, which was the rest and residue left after the payment of the legacies, taxes, costs of administration, etc., and it was only this remainder that vested in the trustees and became the trust estate. It was in connection with the contention that the executors improperly collected the interest and income of the property of the estate and placed it in a general fund out of which to pay claims and charges against the estate, instead of keeping such income and interest separate, that the court said that, "The will does not provide for the separation of income from *corpus* and the payment of income or any part thereof to the beneficiary named in the trust during the period of administration;" that "the trust estate could not be determined and did not come into existence until the administration was completed and final settlement made," and "the residuary estate is that which remains after all obligations constituting charges against the estate and all specific legacies and bequests have been met and discharged." That is good law and would be applicable here had these plaintiffs filed objections to the executor's settlement showing that it had collected the income, mingled it with the other funds of the estate, and paid out of such common fund the disbursements made in this case. That was proper and plaintiffs are not objecting thereto. But, after all that is done, the administration finished, and the residuary estate is determined and passed into the hands of the trustee, there yet remains the question of whether the life tenants of the income of the trust estate should not be paid such income from the date of the death of the testator. Reason and the authorities hold that they should be. The fact that the amount of the residuary estate, the income of which goes to plaintiffs, could not definitely be determined till the administration was closed and claims paid and disbursements made, does not prevent the income from being calculated from the death of the testator, and the parties here seem to have had no trouble in doing so. ▮ An executor, in administering the whole estate, is interested in paying the proper charges against same and in determining the net residuary estate to be turned over to the trustee. The trustee, in administering the trust estate, is interested in paying proper charges against it and determining the net income payable to the life tenants and the net estate going to the remaindermen. [Melvin v. Hoffman, 290 Mo. 464, 235 S. W. 107.]

▮ As far as the construction of this clause of the said will in question is concerned, the same should be and is construed to mean that the plaintiffs, life tenants of the income of the trust estate, are each entitled to such income from the death of the testator, inclusive of the time the defendant trust company had charge thereof as executor of the will. This means the income on the net trust estate as afterwards determined on final settlement of the executor after paying legacies, charges, debts of the testator, and necessary costs and

990

expenses of administration. Such seems to have been the holding of the trial court and there is incorporated in the judgment entered the recital that, ''The court finds as a matter of law that the said Commerce Trust Company was required to pay said net income to the said daughters and daughter-in-law of the testator from and after the date of his death, using the net income which accrued during the administration of the estate of the deceased, while said estate was in the Probate Court of Jackson County, Missouri;'' and the further finding that the income of the trust estate during the first year following the death of the testator amounted to $3800.55, and ''that under the law said income belonged to and was the property of said life tenants, Helen Estey, Rena Weed, and Blanche McLaughlin,'' and the income for the remaining period of the administration by the executor amounted to $3759.33, ''all of which said income, together with interest thereon at six per cent per annum, became the property of and belonged to said life tenants, and that the plaintiffs are entitled to recover of and from the defendants the said income, amounting to the principal sum of $7559.88, together with interest at six per cent, . . . amounting at this time to the total sum of $8566.68.''

This was the construction, and we may say the only construction, of the will made by the trial court, and had the trial court stopped there, as it might have done, its judgment would be affirmed, but the court went further and held that the expenditures made by the executor for its own fees as such and the allowance made by the probate court to the administrator *pendente lite* in the suit to contest the will, as well as taxes paid and improvements made on the property of the estate by the executor, were properly charged to and paid out of the *income for that period*, thus consuming and wiping out such income, leaving nothing for plaintiffs.

█ This raises questions, not of the construction of the will, but of the general law relating to and arising from the relation of life tenant and remainderman. The will in question creates the relation of life tenant and remainderman and makes the three plaintiffs mentioned life tenants of the income of the trust estate conveyed by the will to defendant trust company, and we have construed such relation to have commenced at the death of the testator. The question of what expenditures are properly chargeable against such income and thereby against the life tenants, and what are chargeable against the *corpus* of the estate and thereby against the remaindermen, are questions of general law and are the same as if such property was conveyed to the trustee by deed or otherwise. █ The mere fact that the defendant, as executor or while acting as executor, collected the income on the trust property and placed it in and mingled it with the *corpus* of the trust estate and paid the expenditures mentioned rightly and out of such general fund, does not determine

whether on an accounting with the life tenants such expenditures are properly chargeable against the life tenants or the remaindermen. These questions might have been determined on the final settlement of the defendant as executor in the probate court in ascertaining the amount of the net estate to be turned over to the defendant as trustee, as such net trust estate is what is left after paying specified legacies, debts of the testator, prior charges against the property, the costs of administration, etc. These matters seem to have been left open till the parties could have the will construed so as to determine the beginning date of the income going to the life tenants thereof.

As we gather from the record and briefs of counsel, the trial court did not pass on the question of whether each and all, or what ones, of the items of expenditures made by the executor were properly chargeable against the life tenants and which against the remaindermen under the general law relating to life tenants and remaindermen, nor is the case briefed here on that theory. The facts as to some of the items may need to be developed. We will not, therefore, undertake to decide the many questions of law that may arise in deciding as to whether each particular item paid out is properly chargeable against the *corpus* of the estate or the income. The general rule is that expenditures should be charged against the person or estate benefited thereby. If both the life tenant of the income and the remainderman are benefited, the expenditures may be apportioned. [Reyburn v. Wallace, 93 Mo. 326, 3 S. W. 482.] Ordinary annual taxes are chargeable to the life tenant (Houchin v. Hobbs (Mo. App.), 34 S. W. (2d) 167; Schowe v. Kallmeyer, 323 Mo. 899, 20 S. W. (2d) 26), but assessments for permanent improvements may be charged proportionably against each (21 C. J. 957; Reyburn v. Wallace, supra), and such is the rule with reference to improvements themselves (21 C. J. 953-4; Construction Co. v. Withnell, 190 Mo. App. 33, 43, 175 S. W. 260). "The duties of a life tenant, . . . are to pay the taxes, interest on encumbrances (but not the encumbrance), temporary repairs, a proportionate part of permanent improvements, etc." [Fuller v. Devolld, 144 Mo. App. 93, 128 S. W. 1011.]

It appears clear that the item of executor's fee, $4871.96, should be charged against the *corpus* of the property administered by the executor instead of the income of the trust estate. That is a charge fixed by law in payment of the services of the executor for administering the whole estate. [Sec. 221, R. S. 1929.] Such fee or commission is five per cent of the amount passing through the hands of the executor and disbursed to creditors, distributees or legatees, or otherwise paid out in the course of administration. [Vorderstrasse's Estate v. Haumueller (Mo. App.), 266 S. W. 1019, and cases cited.] Though the same person may act in a dual capacity

as executor and trustee under a will and the services rendered be in part or largely that of trustee, the compensation allowed will be that of an executor (Judson v. Bennett, 233 Mo. 607, 136 S. W. 681) and is by statute allowed by the probate court in the executor's settlement. Such executor's fee is properly allowed and deducted from the funds of the estate the same as amounts due creditors whose demands have been established, and such deductions are made before the "rest, residue and remainder of my estate" passes to the trustee to be administered by it. Any compensation thereafter paid to the trustee for its services as such are properly charged against the income in determining the remainder to be divided, according to the will, into three parts and one such part paid over to each of the three plaintiffs here. Based on much the same considerations, the amount allowed by the probate court to the administrator *pendente lite* in connection with the will contest should be charged against the *corpus* of the estate. Post v. Cavender, 12 Mo. App. 20, is authority for the proposition that attorney's fees may be allowed to and paid by the executor or executor *de bonis non* out of the *corpus* of the estate in his hands for services in preserving the same before paying it over to the trustee of the remainder for the benefit of the remaindermen, but that the trustee cannot pay out of the trust estate for "services rendered prior to its creation." It will not be necessary to go further. The case will be reversed and remanded for new trial in accordance with the views herein expressed. *Ferguson* and *Hyde*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All the judges concur.