437 S.W.2d 132 (1968)
In re ESTATE of Mary Porter BACHELLER, Deceased.
Adele V. STIGALL, Executrix, Appellant,
v.
P. A. HAWKINSON, Respondent.
Nos. 24976, 25045.
Kansas City Court of Appeals, Missouri.
December 2, 1968.
Motion for Rehearing and/or Transfer Denied February 3, 1969.
*134 Dale, Potter & Flynn, Whitney W. Potter, St. Joseph, for appellant.
Linde, Thomson, VanDyke, Fairchild & Langworthy, Robert B. Langworthy, George D. Blackwood, Jr., and John G. Miller, Kansas City, for respondent.
Motion for Rehearing and/or Transfer to Supreme Court Denied February 3, 1969.
HOWARD, Presiding Judge.
These two appeals arise out of proceedings in the same decedent's estate and have been consolidated in this court. They may both be disposed of by one opinion. This controversy originated with exceptions to the final settlement of the executrix filed by one of the two residuary legatees. Two matters are involved: One is the allowance and payment of a pledge to the Christ Episcopal Church of St. Joseph, Missouri; the other is the contention that the fees allowed to the executrix and her attorney are excessive. These fees consist of (1) fees allowed for the administration of the decedent's estate proper, and (2) fees allowed for work to be performed in the future in the administration of a testamentary trust established by decedent's will. The second appeal is from an order refusing to allow payment from the estate for the transcript in the first appeal.
Each of the notices of appeal specifies that the appeal is taken from the order of the circuit court overruling the motion for new trial filed by executrix. An order overruling a motion for new trial *135 is not an appealable order. Therefore, these appeals are not properly taken. However, in each instance it appears that there has been a good faith attempt to appeal from the judgment against appellant. Therefore, we shall consider these appeals on their merits. See Walker v. Thompson, Mo., 338 S.W.2d 114.
As to the Christ Church pledge, the facts show on November 21, 1964, Mary Porter Bacheller was under guardianship as an incompetent. On that date, Whitney W. Potter, the attorney for the guardian, signed a pledge to Christ Church in the total amount of $364.00 per year for three years. $150.00 down payment was paid at the time of the pledge by a check signed by both the guardian and her attorney. This pledge was in two parts. $200.00 per year was for the current church program and $164.00 per year was for church renovation. The pledge was given at a time when the church was conducting a special drive to raise funds for this renovation. Mary Porter Bacheller died October 15, 1965; the guardianship was terminated and Adele V. Stigall became executrix pursuant to the will. Christ Church made claim against the estate for the balance of the three year pledge in the amount of $942.00. The executrix consented to the allowance of this claim in the full amount. It was paid out of the funds of the estate and the executrix took credit therefor in her final settlement which was filed October 28, 1966.
On the 23rd day of February, 1966, the Probate Court of Buchanan County, Missouri, pursuant to petition requesting the same, entered its order granting a partial allowance for fees to the executrix and her attorney in the amount of $2,200.00 to be paid $1,100.00 to the executrix and $1,100.00 to the attorney. On the 7th day of July, 1966, pursuant to a petition requesting the same, the court entered its order granting the balance of the minimum statutory fees to the executrix and her attorney in the amount of $1,089.96 to each, thus making the total minimum statutory fees allowed to the executrix $2,184.96 and the total minimum statutory fees to the attorney for the executrix $2,184.96. (This discrepancy in amounts appears in the court orders.) Thereafter, on the 22nd day of August, 1966, pursuant to separate petitions filed by the executrix requesting additional fees for the executrix and additional fees for her attorney, the probate court entered its order granting a final fee to the executrix in the amount of $4,560.04, making a total fee to the executrix of $6,750.00. On the same day, the probate court entered its order allowing final attorney's fees to the attorney for the executrix in a like amount, making total fees to the attorney for the executrix in the amount of $6,750.00. Thus, the estate paid total fees to the executrix and her attorney in the amount of $13,500.00. The exceptions filed by respondent contend that these fees are excessive.
After the exceptions were filed by respondent, who was one of the two residuary legatees under the will, the executrix filed application and affidavit for change of venue alleging that the probate judge of Buchanan County was an interested party and was biased and prejudiced against the executrix. Pursuant to this application, the judge of the probate court disqualified himself and certified the case to the Circuit Court of Buchanan County, Missouri.
The exceptions to the final settlement of the executrix were tried to the circuit court sitting without a jury and resulted in a judgment sustaining the objections to the pledge to Christ Episcopal Church in part and overruling the objections in part. The church was ordered to refund to the estate the amount of $450.00. Thus, the judgment of the circuit court sustained the payment of the pledge in the amount of $490.00. The court sustained the objections to that part of the fees paid to the executrix and her attorney over and above the statutory minimum fees of $2,189.96 to each. The excess was ordered refunded to the estate. From this order, the executrix has appealed.
*136 The parties stipulated that the circuit court should retain jurisdiction of the case to enter final orders of distribution and "anything else that is necessary to wind up the administration of this estate." Therefore, while this appeal was being perfected the executrix applied to the circuit court for authority to pay out of the estate $346.45 for the transcript on appeal. A hearing was held on this application and the court denied the request. The executrix has appealed from this ruling. The court indicated that it considered this ruling to be consistent with that part of the final decree ruling on the exceptions which said: "The Court further orders all expense in connection with the litigation in this Court be taxed against the executrix for the reason that the Court has found the fees of the executrix and the attorney for the executrix to be excessive in the amount of $9,120.80 and that the litigation in this Court was of no benefit to the estate."
On this appeal the executrix contends that the exceptions to her final settlement should have been dismissed because she acted in reliance on the orders of the probate court sustaining the claim of Christ Church and allowing the fees to herself and her attorney. This contention is based upon the provisions of Section 472.150 (unless otherwise indicated, all statutory references are to RSMo 1959, V.A.M.S.), the pertinent part of which reads as follows:
"For good cause, before the expiration of the period allowed for appeal after the order of final distribution of the administration of the estate of a decedent or ward, the court may vacate or modify its orders, judgments and decrees, or grant a rehearing therein * * *. No vacation or modification under this section affects any act done or any right acquired in reliance on any such order, judgment or decree."
It is apparent from the reading of this statute that it has no application in the case at bar. The executrix certainly cannot claim immunity for the payment of a claim to which she consented when it should obviously have been contested as is pointed out hereinafter, nor can she claim that the ex parte allowance of fees to herself and her attorney on her application forecloses for all time any consideration of whether or not such fees are excessive. The statute, by the first quoted provision thereof, specifically authorizes the probate court to modify its previous orders and this of course includes the orders here in question. This statute was adopted for the first time with the new Probate Code of 1955 and it contemplates that the entire administration shall be one action and that until final determination the whole matter is in the breast of the court. The contention of the executrix would nullify all of the effects of this statute. The executrix also contends on the basis of In re Carlin's Estate, 226 Mo.App. 622, 47 S.W.2d 213, that the orders of the probate court here in question constituted final judgments since they were not appealed from and that therefore they cannot be disturbed on a consideration of respondent's exceptions. The simple answer to this is that there was no statutory provision comparable to Section 472.150 at the time of the decision in the cited case. Since these fees were not allowed as part of a settlement as required by Section 473.153(4), the orders allowing them do not become final judgments until incorporated in and approved as part of the final settlement. See In re Waters' Estate, Mo.App., 153 S.W.2d 774.
We therefore conclude that the Circuit Court of Buchanan County, acting in effect as the probate court after the probate judge disqualified himself and certified the case to the circuit court, In re Boeving's Estate, Mo.App., 388 S.W.2d 40, was authorized by this statute to consider exceptions to the final settlement and if the evidence justified, modify the orders in question.
As to the pledge to Christ Episcopal Church, the executrix in her brief, argues *137 long and earnestly that the church's action in incurring expenses for the reconstruction of the church in reliance on this and other pledges constituted consideration and converted the pledge into a binding contract which the estate of the pledgor was obligated to pay. We have no quarrel with the authorities cited in support of this contention but at best, as determined by the circuit court, they could only apply to that part of the pledge which was for the reconstruction program. These authorities have no applicability to the part of the pledge which was specifically allocated by the pledge itself, to the current church program. In its findings of fact and conclusions of law, the circuit court pointed out that a pledge to a church's general budget is not a binding and legal obligation and should not have been paid by the executrix, whereas, a pledge to the church's building or renovation program that has been acted upon, may become a legal obligation. It was on this basis that the court sustained the payment of the pledge insofar as it pertained to the building program and denied it insofar as it pertained to the current church budget. The executrix points out that during the reconstruction of the church, it was discovered that certain of the main supporting became had deteriorated and needed to be replaced. The church paid for this unexpected expense out of its general funds rather than funds contributed for the renovation program. From this it is argued that the funds pledged to the general fund should be considered, because of this use, as being in the same category a. those pledged to the renovation program. We cannot agree. One emergency payment from the general fund cannot change the nature of the pledge.
Respondent earnestly contends that this pledge was invalid in its entirety because it was signed only by Whitney W. Potter, as attorney for the then guardian of Mary Porter Bacheller, who was also a member of the vestry and attorney for the church and who is now attorney for the executrix. He contends that the attorney had no authority to make a gift of any of the assets of his client's ward and that the guardian likewise was without authority to make such gift and that therefore no binding contract resulted and the payment of the pledge out of the decedent's estate was improper in its entirety. We have grave doubts that the attorney, or the guardian and the attorney acting together, could make a valid gift properly payable out of the decedent's estate but we are relieved of the necessity of deciding this question by the provisions of the pledge itself. On the face of the pledge card it is stated "This Pledge May Be Changed or Cancelled Upon Notice to the Treasurer." This unlimited right to change or cancel the pledge would prevent it from becoming a binding contract and thus, under no circumstances could it properly constitute a claim against the estate. Therefore, the trial court did not err in disallowing that portion of the pledge which was made to the current church program. The action of the circuit court in sustaining that portion of the pledge made to the church renovation program has not been appealed from by respondent and, therefore, is not before us for consideration. We therefore affirm the order of the circuit court as it pertains to the pledge to Christ Episcopal Church.
As to the fees allowed to the executrix and her attorney, respondent contends that such fees are excessive and that in view of the nature of the estate, the statutory minimum fees were sufficient and adequate to reasonably compensate the executrix and her attorney for services rendered. On the other hand, the executrix and her attorney contend that the fees allowed by the probate court are reasonable and proper and that the statutory minimum fees as finally allowed by the circuit court are inadequate and that the circuit court abused its discretion in reducing the fees allowed by the probate court.
This estate consisted of one parcel of real estate which was valued at $12,200.00, *138 and personal property in the amount of $62,832.04. The real estate was not sold to pay debts and went directly to the respondent and the other residuary legatee and does not figure in the estate. The total fees allowed in the amount of $13,500.00 are over 20 per cent of the personal property in the estate. The estate paid six items of final bills, such as utility bills, in the amount of approximately $60.00. There were only two other claims against the estate, one for funeral expenses and the other being the claim of Christ Episcopal Church heretofore discussed. Other than this, all items in the settlements filed by the executrix concern matters of administration. The assets of the estate were primarily corporate stocks which were inventoried at $58,567.51. All of these stocks were sold pursuant to the order of the probate court although the cash was not needed to pay debts, and specific cash bequests amounted to only a little over $16,000.00. The sale of these stocks was handled by a broker who charged the usual commission for his services. The federal estate tax return was prepared by a C.P.A. who was specifically allowed and paid $600.00 for his services.
Section 473.153 provides minimum fees for the executrix and her attorney. It provides in pertinent part as follows:
"* * * When there is only one executor or administrator he shall be allowed as the minimum compensation for his services the following percentages of the value of the personal property administered and of the proceeds of all real property sold under order of the probate court.

 On the first__________$ 5,000, 5 per cent;
 On the next___________ 20,000, 4 per cent;
 On the next___________ 75,000, 3 per cent;
 On the next___________ 300,000, 2¾ per cent;
 On the next___________ 600,000, 2½ per cent;
 On all over___________ 1,000,000, 2 per cent.

In any case where reasonable compensation to the executor or administrator is in excess of the minimum provided in the above schedule, the court shall allow such additional compensation as will make the compensation of the executor or administrator reasonable and adequate. Performance by the executor or administrator of extraordinary services is not necessary to entitle him to such additional compensation * * *."
The provision for attorney's fees is essentially the same as the provision for fees of the executor above quoted. It is to be noted that the statute authorizes fees over and above the minimum only where reasonable compensation to the executor or attorney is not achieved by the minimum. In such circumstances, the statute authorizes the allowance of fees which will make the compensation of the executor or attorney "reasonable and adequate." The performance of extraordinary services is not a prerequisite to entitlement to additional compensation. Thus, our duty is to determine whether or not the minimum fees as allowed by the circuit court constitute reasonable compensation to the executrix and her attorney or whether additional fees are necessary to make the compensation of the executrix and her attorney reasonable and adequate.
The respondent produced as an expert witness a well-known attorney who is a senior partner in a large Kansas City law firm and who is the head of the Probate, Trust and Administration of Estates Department of his firm. He examined the *139 probate file in this estate and testified on the basis of this examination and also in answer to hypothetical questions, that it was routine in all respects and that the statutory minimum fee would be amply sufficient to constitute reasonable compensation to the executrix and her attorney. The executrix did not produce any disinterested expert. The executrix argues in her brief that the allowance of these fees by the probate judge should be the equivalent of his expert testimony that the fees he allowed were reasonable. The record in this case does not reveal what showing, if any, was made in support of the application for fees. It appears that the court in fact accepted the report of hours worked and estimate of future hours to be worked by the attorney, together with a minimum hourly charge of $25.00, without question and allowed the fees, ex parte, as a matter of course rather than as a matter of independent evaluation. The executrix herself and her attorney, Mr. Potter, testified in support of the fees allowed. Attached to the petition for additional attorney's fees over and above the statutory minimum is a schedule showing hours worked by the attorney in the administration of this estate. It shows 150 hours expended up to that time with an estimate of 40 additional hours to be performed up to the final closing of the estate, thus making 190 hours. It also shows an estimate of 80 hours work to be performed in the future in connection with the administration of a trust which will be considered later. As to the 190 hours, the fee was calculated by multiplying 190 times $25.00, which is the minimum hourly rate provided in the minimum fee schedules promulgated by the St. Joseph, Missouri Bar Association and the Missouri Bar. The petition for additional fees for the executrix over and above the minimum fee adopts by reference this schedule of hours worked by the attorney. No attempt is made to show how the number of hours worked by the attorney bears upon the services performed by the executrix and no attempt is made to explain why the executrix should be compensated at $25.00 an hour. Admittedly, she has no office or other overhead expense and no special training. She disclaimed any legal knowledge although she is the wife of a well-known and respected lawyer. She stated that she went to the attorney's office, to the bank or the court when requested to do so and examined the pleadings, papers and documents she was requested to sign. She stated that it took her about an hour and a half per trip to make arrangements for the care of her husband and to go to her lawyer's office or bank and return home and that she made such trips 8 or 10 times a month.
The basic contention of the executrix as set forth by her attorney in her brief as to attorney's fees is that he, in fact, put in the number of hours shown on his schedule; that the time estimated for the final winding-up of the estate is reasonable; that he is entitled to $25.00 per hour for such time; and that this mathematics works out to a fee of $6,750.00, and that no other considerations are involved. We cannot agree with such contention. Minimum fee schedules cannot change statutory provisions. If the statutory minimum fee constitutes reasonable compensation for the services rendered, it is all that can be allowed regardless of time spent or the hourly charge prescribed by any minimum fee schedule promulgated by a bar association. Time involved is only one item to be taken into consideration to determine reasonable compensation for the attorney and for the executrix. The amount of the estate must be considered, the difficulty of the duties involved must be considered, the nature of the services performed must be considered. In his testimony, Mr. Potter emphasized that a great amount of time was required and difficulty encountered in selling the corporate stock represented by 48 certificates in 14 different corporations. However, it was admitted that the stock was actually sold by a broker and that the services of the attorney and the executrix were primarily the securing of copies of certain documents to effectuate the sale. The attorney *140 also points out that a federal estate tax return and a Missouri inheritance tax return were prepared. The federal estate tax return was prepared by a C.P.A. who was allowed a separate fee of $600.00 for his services. This return is in the record and has been examined. It is just about as short and simple as it is possible to get. No tax was due. It would reasonably require very little for the executrix and her attorney to obtain the necessary information for the preparation of such return.
The brief emphasizes the amount of work involved in investing excess cash in U.S. Government bonds to secure interest for the estate. There was no need to liquidate all of the decedent's stockholdings which resulted in this excess cash, in the first place. A specific order from the probate court authorizing such investment was secured (and charged for) when such investment was authorized by statute without special order. The actual purchase of the securities was made by the banker and no significant effort on the part of the executrix or her attorney was required. This was simple routine. The brief of executrix also dwells upon the fact that the executrix discovered a separate savings account in another bank in the amount of $438.00 as underlining the value of the services of the executrix. The evidence shows that this came about by reason of a routine notice of a change in interest rate and that no effort was expended in discovering this account.
As to the 40 hours estimated by the attorney for the final closing of the estate, the evidence shows that this estimate was based upon a claimed average of hours spent per month in the administration of the estate and not an estimate of the time which would, in fact, be required to perform the anticipated duties. When asked what would need to be done to close the estate, the attorney answered: "Well, after the fees are allowed, of course what I did was to prepare a final settlement and then disburse the money, get receipts, and have a final order of discharge." The final settlement consisted of a little over three pages. The attorney was unable to justify this estimate of 40 hours and when asked how he arrived at the monthly average of hours worked, he answered: "I don't know. I am not going to do arithmetic with you here."
It appears from the testimony of Mr. Potter that much of the time for which he claimed compensation at $25.00 an hour, in fact represented the performance of clerical functions which normally would have been performed by his secretary or the executrix and in acting as messenger boy in carrying checks to the bank, in wrapping and mailing items of jewelry, silver, etc., which were the subjects of the specific bequests in the will, and other routine and nonprofessional services. The attorney is not entitled to fees at professional legal rates for time spent in such menial endeavors. See In re Alexander's Estate, Mo., 360 S.W.2d 92, 107, and In re Claus' Estate, Mo.App., 167 S.W.2d 372.
An attempt is also made to justify this fee because the Missouri inheritance tax return showed a deduction for attorney's fees in the estimated amount of $7,000.00 and the federal estate tax return showed a deduction for attorney's fees in the estimated amount of $6,000.00. These estimates have absolutely no probative value as to the reasonableness of the fees charged. At best, they represent nothing more than a statement of what the attorney expected to charge.
An attempt is made to justify the fee to the executrix on the basis that she has expended and will in the future expend much time and effort on this litigation over such fees. The fees were originally allowed before this litigation started and the circuit court properly made its determination as of the time of the original allowance. Excessive fees cannot be justified *141 by time and effort spent in attempting to defend them.
We have carefully examined the record in this case and have given particular attention to the testimony of the executrix and her attorney. We have concluded that the fees allowed by the probate court were grossly excessive. They bore no resemblance to the value of the services actually performed by either the attorney or the executrix, and constitute an unconscionably large invasion of the corpus of the estate. We have further concluded that the statutory minimum fees to the executrix and her attorney as allowed by the circuit court are amply sufficient to reasonably and adequately compensate them for the services, in fact, rendered.
Included in the fees allowed to the executrix and her attorney by the probate court were fees for future services to be performed in the administration of a testamentary trust created by Paragraph Seventeen of decedent's will. The attorney estimated that he would expend 80 hours of his time which, at $25.00 per hour, comes to a fee of $2,000.00. The probate court granted him a fee of $2,000.00. The executrix was also granted a fee of $2,000.00 for this service.
Paragraph Seventeen of the will reads as follows:
"I bequeath unto Carolyn Howland of Vestal, New York, the sum of two thousand ($2000) dollars; this two thousand dollars, however, to be retained by executor as Trustee (which I herein appoint him), and whose duty it will be to pay said beneficiary out of said sum the amount of twenty-five dollars per month until said sum of two thousand dollars shall be exhausted. Said trusteeship not to delay the closing of administration of my estate."
Thus, it will be seen that the principal amount of this trust was $2,000.00 and the probate court allowed a total of $4,000.00 as fees to the executrix and her attorney. Absent some extraordinary circumstance, this comparison of the fees allowed and the principal amount of the trust would demonstrate that the fees are excessive. The duties imposed upon the trustee were just about as simple as could be imagined. All that she was required to do was hold the $2,000.00 and pay out one check in the amount of $25.00 each month for a period of 80 months when the $2,000.00 would be exhausted. Under no stretch of the imagination could this require services by the executrix of a reasonable value of $2,000.00 and there was even less reason to believe that she would require services of an attorney reasonably valued at $2,000.00.
The evidence of the executrix attempted to justify these fees by pointing out that the principal amount of the trust was placed in a savings account drawing interest, and that frequent trips to the bank would be required by the executrix and her attorney to transfer funds from the savings account to the checking account. The respondent counters by pointing out that it was not economically sound to spend $4,000.00 in fees to earn a very modest amount of interest. These fees were allowed for estimated future services. The executrix is an elderly woman and no one has any way of knowing whether she will be around to perform these services in the future or be competent to do so. Likewise, it cannot be known for certain whether or not the attorney for the executrix will be present and able to perform these future services or whether he will, in fact, be retained as the attorney to perform such services. Thus, all else aside, the granting of such fees for the future was an abuse of discretion on the part of the probate court and the circuit court was justified in refusing to take this trust matter into consideration in fixing reasonable and adequate compensation for the executrix and her attorney.
Furthermore, these fees were allowed for future services in connection with the testimentary trust over which the probate court has no jurisdiction. See First National Bank of Kansas City v.
*142 Mercantile Bank and Trust Co., Mo., 376 S.W.2d 164. This case pointed out that probate courts had jurisdiction to exercise equitable powers in connection with matters of probate business but that the administration of testamentary trusts was not probate business. The executrix contends that the probate court has power to construe wills and that the allowance of fees in connection with the administration of this testamentary trust was merely a construction of the will. The only provision of the will relating to this trust was Paragraph Seventeen as heretofore quoted and there is nothing therein that could possibly be construed as authorizing the allowance of such fees. This matter was simply beyond the jurisdiction of the probate court. Until the closing of the decedent's estate, the executrix acts in the dual capacity of executrix and trustee and can receive compensation only in her capacity as executrix. She cannot receive additional compensation during this period in her capacity as trustee. See Estey v. Commerce Trust Co., 333 Mo. 977, 64 S.W.2d 608, 616, and Judson v. Bennett, 233 Mo. 607, 136 S.W. 681, 695. Her compensation as executrix is properly payable out of the decedent's estate but after the decedent's estate is closed and she acts only as trustee, the question of her compensation pertains to the administration of the trust, not the administration of the decedent's estate, and is properly cognizable by the circuit court and not by the probate court. See Estey v. Commerce Trust Co., supra.
In addition to appellant's transcript on appeal, the respondent secured and filed in this court a supplemental transcript. This contains only the argument of counsel for objector before the circuit court. Such argument should be presented to this court in the brief, not in this manner. This supplemental transcript did not contain anything necessary to the determination of any question presented to this court and therefore did not perform any useful function. Consequently, the costs of this supplemental transcript are taxed against respondent.
This leaves only the question of costs. As we have heretofore pointed out, the original judgment of the circuit court assessed the costs against the executrix because the litigation was of no benefit to the estate. On her appeal from this judgment, the executrix in her brief does not make a point that this order as to costs was erroneous. The points and authorities found in appellant's brief do not mention the matter of costs.
We cannot agree with the contention of the executrix that the original order of the circuit court taxed costs to be paid out of the estate. The court's language clearly contemplates that the costs will be paid by the executrix individually. The order of the circuit court refusing permission to pay for the transcript out of the estate is consistent with its prior order as to costs.
Here the executrix is attempting to justify a fee of $6,500.00 to herself and her attorney is attempting to justify a fee of $6,500.00 to himself. Thus, in each instance the executrix and her attorney are contending for their personal interests in the fees allowed to them by the probate court. They are not representing the creditors, devisees, heirs, etc., of the estate in securing a correct, complete and proper administration of the estate. In re Flynn's Estate, Mo.App., 177 S.W.2d 694, involved a claim by an attorney for fees for representing an estate in resisting exceptions to the final settlement. He admitted that he was not entitled to any fee for resisting the exceptions directed to the allowance of his own fee and the court agreed with him. We believe that the philosophy of this case is equally applicable to the case at bar.
The appeal in Case No. 25045 is from the order of the circuit court refusing to allow the executrix to pay for the transcript on appeal in Case No. 24976 out of the funds of the estate. We agree that since this litigation is an attempt to defend the collection of exorbitant fees from the estate and to justify the payment of an obviously *143 invalid pledge which by its terms could not become a binding contract, this litigation is not for the benefit of the estate. Therefore, the judgment of the Circuit Court of Buchanan County appealed from in Case No. 24976 is affirmed and the order of the Circuit Court of Buchanan County appealed from in Case No. 25045 is affirmed.
All concur.