This is an appeal from the provision in a decree of final distribution making allowances to the administrator and his attorney.
The decedent, Glenn R. Fetterman, a man of eccentric habits, had conducted a drug store in Bremerton, where he had lived for many years. He lived alone in quarters at the rear of his store, his wife having died many years before. In addition to the drug store, he had accumulated considerable other property, real and personal. He owned shares of stock in the Citizens Bank of Bremerton and was vice-president of the institution. The president of the bank was Ernest C. Ebert, *Page 411 
whom Fetterman consulted and who knew more about his business affairs than any one else.
On Fetterman's death, January 3, 1934, Ebert was appointed special administrator of the estate and took immediate charge. Many uncashed checks of long standing were found in his living quarters, and several thousand dollars in gold and gold certificates in his safety deposit box. He appears to have kept no books of account and to have done business on a cash basis. He owed no debts except to the Citizens Bank of Bremerton and to a bank in Puyallup.
Upon his appointment as special administrator, Ebert proceeded to gather together the threads of Fetterman's business and continued the operation of the drug store until it was sold six months later. He was appointed general administrator of the estate January 22nd, nineteen days after his appointment as special administrator. At the close of the special administration, he made a report of his proceedings to the court and was allowed seven hundred dollars for his services, and five hundred dollars was allowed to James W. Bryan, Jr., his attorney. In making these allowances, the court announced that they would be taken into account in fixing fees at the close of administration.
The estate inventoried eighty thousand dollars, the bulk of it being personal property, including cash, the stock in the drug store, shares of stock in Citizens Bank of Bremerton, and stock in a real estate holding corporation of which Fetterman owned half. The drug store, while appraised at $12,625, was sold for $7,894. The value of the other items in the inventory, outside of cash, may have had the same relation to the appraised value.
On October 1, 1934, the administrator submitted his final account and asked for an allowance for himself *Page 412 
and his attorney for services. In addition to the sums allowed for special administration, the court allowed each forty-five hundred dollars for services in the general administration. The final report showed that during the nine-months' period of administration, there had been cash receipts of $37,475.87 and disbursements of $23,289.18, leaving on hand $14,186.69. The cash received was made up of the sum carried over from the special administration, the sale of the business property owned jointly by Fetterman and one Friedman, uncashed checks collected by the administrator amounting to $1,225.06, and dividends from the holding company. Of the cash on hand at the time of the final account, twelve thousand dollars was reserved to pay state and Federal inheritance taxes and to cover final determination of allowances made to the administrator and his attorney. In addition to the cash on hand, there remained for distribution property of the appraised value of between forty and sixty thousand dollars.
There was no substantial litigation involved in the administration of the estate. An excessive claim of a specialist called to wait on Fetterman during his last illness was contested and finally compromised for one thousand dollars. A tract of land near Puyallup was taken over by the estate without litigation. As we have seen, the drug store was conducted by the administrator for six months, receiving general attention from him.
It is manifest from the record that the administrator was diligent in the performance of his duties, and that the assets were carefully handled. Undoubtedly, the estate involved considerable detailed attention, although it was largely routine. One Friedman, who owned a parcel of business property jointly with Fetterman, applied for and was appointed administrator *Page 413 
of this joint property. He later purchased Fetterman's interest.
The heirs contesting the allowances are four aunts of the decedent, living in distant parts of the country.
[1] With respect to allowances for services of personal representatives and attorneys, we have said that each case must stand upon its own footing, the general rule being that this court will not interfere with the trial court's discretion nor disturb its findings unless there are facts and circumstances clearly showing an abuse of discretion. In re Andrews' Estate,123 Wn. 546, 212 P. 1073; In re Levy's Estate, 125 Wn. 240,215 P. 811; In re Hart's Estate, 156 Wn. 255,286 P. 650.
It would be impossible, of course, to embody in an opinion a recital of the various and minute transactions, more or less routine, involved in the administration of an estate like the one before us. We have, however, gone through the bill of exceptions and the transcript of the proceedings, and from them have reached the conclusion that the allowances made in this case are so excessive, measured by the size of the estate and services rendered, as to amount to an abuse of discretion in the trial court making them. As we have said, there was no substantial litigation and no difficult problems to solve or controversies to adjust. It does appear that considerable correspondence was required to determine the nearest of kin, but this was a detail involving only the sending out of questionnaires and letters. While we have said that the estate was well managed, we think the allowances of the court were overly liberal for the nine-months' service required to close the estate.
From the colloquy of court and counsel when the allowances were fixed, we gain an impression that the fact that the next of kin are somewhat remote relatives *Page 414 
living in distant parts of the country, was given consideration. Reference was also made to the doctor's fee for a doubtful service. Doubtless, human nature being what it is, such considerations will be present, consciously or subconsciously, when allowances are made. But after all, the just standard is adequate compensation for services rendered.
The administrator was allowed seven hundred dollars for the special administration, and his attorney five hundred dollars. We think an additional allowance of two thousand dollars to each for services in the general administration would be a fair and liberal compensation for the services rendered. This makes a fee of twenty-seven hundred dollars for the administrator and twenty-five hundred dollars to his attorney.
It appears from the record that an advance of three hundred dollars was made to each in the course of the administration. This, of course, will be charged against the allowances.
The cause is remanded to the superior court, with direction to modify the final decree in accordance with this opinion.
MAIN, BEALS, TOLMAN, and BLAKE, JJ., concur. *Page 415