[No. 50257-9. En Banc. January 11, 1985.]

*In the Matter of the Estate of*
CARL LARSON.

*Benson & Stege,* by *Lynda Frazier,* for petitioner.

*Manza, Moceri, Gustafson & Messina, P.S.,* by *Michael S. Manza* and *John S. Glassman,* for respondent.

DORE, J.—This case concerns a dispute over attorney fees incurred in the probate of an estate. We hold that, in establishing the reasonableness of an attorney fee based on hours multiplied by an hourly rate, probate attorneys must offer evidence not only that the hourly rate was reasonable

but also that the hours spent were necessary in processing the estate. Further, attorneys in probate are not entitled to an additional fee out of the estate in proving the reasonableness of their fees.

PROCEEDINGS BELOW

Carl Larson died intestate on January 27, 1979 in Pierce County. The decedent's cousin, Ivan O. Swanson agreed to act as personal representative. Swanson engaged his own attorney, Michael Manza, of Manza, Moceri, Gustafson & Messina, P.S., to probate the estate. Throughout the course of the probate proceedings, Mr. Manza was assisted by his son, Patrick Manza, first in the capacity of a legal intern and later as an attorney associate.

In the subject case, 45 relatives in the United States and Sweden were determined to be entitled to inherit under the Washington descent and distribution statute. Administration of the estate required identification and genealogical classification of the heirs, liquidation of the estate assets, filing of federal and state tax returns, and distribution of assets to heirs. The proceeds from the sale of the estate assets, primarily timberlands, totaled $463,672.36.

When the estate was ready to close, 33 of the 34 heirs in Sweden, through their attorney in fact, objected to the personal representative's final report and petition for distribution on three bases: (1) too much federal estate tax was paid; (2) the real estate was valued inconsistently in the federal and state tax returns, and (3) the attorney fees requested were excessive. Prior to the hearing, the first two objections were abandoned, leaving only the reasonableness of the attorney fee at issue. At the hearing held before a superior court commissioner, both the personal representative and the objectors presented expert testimony on the reasonableness of the requested attorney fees of $23,145. The commissioner found the requested fees were reasonable and entered findings of fact, conclusions of law and an order approving the final report. He also ordered the objectors' share of the estate to pay $10,000 additional attorney

fees and $2,010.85 costs incurred by the Manza firm in proving a reasonable attorney fee in the final report.

The objectors sought review of the court commissioner's order by a superior court judge, pursuant to RCW 2.24.050. The judge reviewed the record, heard oral argument, and denied the motion. His order directed payment of $23,145 to the estate's attorneys and approved the commissioner's assessment of $12,010.85 in additional attorney fees and costs. In addition, the judge allowed an additional attorney fee of $4,030 and costs of $350 for resisting the motion for revision and assessed these items against the objectors' share of the estate.[1]

The Court of Appeals affirmed the trial court's ruling that the $23,145 fee was reasonable, and held additional fees could be assessed against the estate for proving the reasonableness of contested attorney fees. The court held, however, that the additional fees should not have been assessed against the objectors' share of the estate but rather treated as expenses of the administrator. *In re Estate of Larson*, 36 Wn. App. 196, 674 P.2d 669 (1983). This court accepted review on the issues of (1) the reasonableness of the $23,145 fee, and (2) the propriety of assessing additional fees against the estate to prove the reasonableness of challenged attorney fees.

### FIDUCIARY RELATIONSHIP

■ In any dispute over attorney fees, our analysis must be premised on fundamental principles regarding the attorney–client relationship. A fiduciary relationship exists as a matter of law between an attorney and client, and the attorney owes the highest duty of fidelity and good faith to the client. *Perez v. Pappas*, 98 Wn.2d 835, 659 P.2d 475 (1983). In probate, the attorney–client relationship exists

---

[1]The record indicates that the Superior Court simply adopted the commissioner's findings of fact and conclusions of law as its own. We believe that the superior courts, in reviewing decisions of court commissioners pursuant to RCW 2.24.050, should enter their own findings of fact and conclusions of law into the record. *See In re Smith*, 8 Wn. App. 285, 505 P.2d 1295 (1973).

between the attorney and the personal representative of the estate. *In re Estate of Peterson,* 12 Wn.2d 686, 123 P.2d 733 (1942). The personal representative stands in a fiduciary relationship to those beneficially interested in the estate. He is obligated to exercise the utmost good faith and diligence in administering the estate in the best interests of the heirs. *Hesthagen v. Harby,* 78 Wn.2d 934, 481 P.2d 438 (1971). The personal representative employs an attorney to assist him in the proper administration of the estate. Thus, the fiduciary duties of the attorney run not only to the personal representative but also to the heirs.

The Code of Professional Responsibility speaks directly to a lawyer's fiduciary responsibilities to his client with respect to fee arrangements. CPR EC 2–17 provides:

> The determination of a proper fee requires consideration of the interests of both client and lawyer. A lawyer should not charge more than a reasonable fee, for excessive cost of legal service would deter laymen from utilizing the legal system in protection of their rights. Furthermore, an excessive charge abuses the professional relationship between lawyer and client. On the other hand, adequate compensation is necessary in order to enable the lawyer to serve his client effectively and to preserve the integrity and independence of the profession.

We analyze the reasonableness of the fee charged by the Manza firm in the context of those fiduciary obligations arising out of the attorney–client relationship.

### REASONABLENESS OF FEES

Generally, this court will not interfere with an allowance of attorney fees in probate matters unless there are facts and circumstances clearly showing an abuse of the trial court's discretion. *In re Estate of Belknap,* 12 Wn.2d 643, 123 P.2d 358 (1942); *In re Estate of Fetterman,* 183 Wash. 410, 48 P.2d 638 (1935). The record before us in the present case is the same as the record before the superior court judge in his review of the court commissioner's decision. We are, therefore, in the same position as the superior court

judge in determining the reasonableness of fees. *In re Estate of Thompson,* 133 Wash. 481, 485, 233 P. 941 (1925). *In re Estate of Fetterman, supra.*

*In re Estate of Peterson,* 12 Wn.2d 686, 728, 123 P.2d 733 (1942) sets forth the criteria to be considered in evaluating attorney fee requests in probate proceedings:

> In fixing the amount to be allowed as a fee for the attorney of a decedent's personal representative, the court should consider the amount and nature of the services rendered, the time required in performing them, the diligence with which they have been executed, the value of the estate, the novelty and difficulty of the legal questions involved, the skill and training required in handling them, the good faith in which the various legal steps in connection with the administration were taken, and all other matters which would aid the court in arriving at a fair and just allowance.

*See also In re Estate of Bailey,* 56 Wn.2d 623, 354 P.2d 920 (1960). The objectors based their challenge to the fee on similar factors listed in DR 2–106 of the Code of Professional Responsibility.[2]

The primary challenge to the fee involves the necessity of spending 364.5 hours in attorney time to probate the Larson estate. The objectors point out that the estate consisted of only one major asset, the timberlands, and presented no novel or difficult legal or administrative problems other

---

[2]CPR DR 2–106(B) provides:

"A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

"(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

"(3) The fee customarily charged in the locality for similar legal services.

"(4) The amount involved and the results obtained.

· "(5) The time limitations imposed by the client or by the circumstances.

"(6) The nature and length of the professional relationship with the client.

"(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

"(8) Whether the fee is fixed or contingent."

than locating heirs in a foreign country. This was accomplished with the assistance of the Swedish Consulate with only minor difficulties. They also express concern over duplication of efforts resulting from two attorneys in the Manza firm sharing responsibility for the probate of the estate. In this regard, they also contest fees charged for the services of Patrick Manza, an attorney who was not admitted to the bar until some time after the Manza firm was retained in this matter. Counsel for the objectors stated in closing argument before the court commissioner:

> We have no objection particularly about the quality of the work, it's the redundancy and amount of time that was spent, not the amount of time that was required. The Court has heard expert testimony and that in response to the memorandum that was presented to us and to the Court that the fees were based on DR 2-106 that their fees were based on the criterion laid out therein and looking at the criterion, one of it is the basic starting point is "the amount of time required." It's not the amount of time spent for needless work done.

Report of Proceedings, at 216.

Specifically, the objectors point to a number of seemingly routine matters that occupied an inordinate amount of the Manza firm's time. For example, the $463,672.36 in proceeds from the sale of the estate's assets was invested in 14 savings accounts with a number of different local banks. This took approximately 47.4 hours of attorney time, billed at $75 per hour, with an aggregate fee for this service of $3,555. Preparation of inheritance and estate tax returns took approximately 52.6 hours at $75 per hour, resulting in $3,945 in fees.

### EXPERT WITNESSES

At the hearing on the fees, attorneys for the estate and the objectors presented expert testimony on the reasonableness of the fee. Marshall Adams and Elvin Vandeberg, two Pierce County attorneys, testified for the estate. Adams testified that $35,000 would be a reasonable fee. Vandeberg stated a reasonable fee would be $25,115.50. Neither Adams

nor Vandeberg addressed the issue raised by the objectors which is the *necessity* of the hours. Instead, both experts based their opinions on the assumption that 364.5 hours were necessary to close the probate. With this assumption, both estate experts testified to the reasonableness of the fee by multiplying the 364.5 hours by the hourly rate charged.

Witness Adams, in testifying, also relied on the assumption that the estate attorneys saved the estate $20,000 by avoiding the use of a real estate broker to sell the timberland. Adams gave this factor great weight. Yet, the record reveals it was the administrator, not the estate attorneys, who arranged for the services of the timber consultant in conducting the sale of the land.[3]

John R. Stair, an experienced Seattle attorney, testified as an expert for the objectors. He did not offer an opinion on what a reasonable fee would be. Rather, he testified to the amount of time he thought would be reasonably necessary to probate Larson's estate—48 hours of a legal assistant's time and 131 hours of a lawyer's time. Report of Proceedings, at 193. This was the *only testimony* in the record which addressed the factual issue raised by the objectors; *i.e.,* the number of hours reasonably and necessarily required to probate this estate.

---

[3]This is clear from the testimony of attorney Michael Manza:

"Q Now, what particular problems were entailed with respect to the sale of this real estate?

"A Well, I had been approached by several people interested in buying the land, I was approached by a fellow named Blair and other people and I was, I think I was also called by Mr. Turlis. I told him that we were going to try to sell the property but we didn't know how we were going to do it. I had conferences with Mr. Swanson, several conferences with him on whether we should retain a real estate broker or was there some other way to go. Mr. Swanson told me that he would go down to the Department of Natural Resources, that somebody he had talked to in Eatonville suggested that he go to the Department of Natural Resources in Olympia and that there might be an alternate way other than selling the property through a real estate broker. Mr. Swanson came back and told me that he had been referred to several professional forestry service companies, one of them being Mr. Winn's company, so we contacted Mr. Winn." Report of Proceedings, at 39.

INVESTMENT OF PROCEEDS

Estate attorneys, in assisting the personal representative in the management of the estate assets, owed a fiduciary duty to the heirs to maximize the rate of return on the assets. *See Allard v. Pacific Nat'l Bank,* 99 Wn.2d 394, 663 P.2d 104 (1983). The record shows they breached this duty. The following is a summary of the time expended and the hours charged during which estate funds were deposited in 14 savings accounts, subsequently withdrawn and deposited and redeposited in numerous certificates of deposit and treasury bills:

| Day | Hours | Description |
| --- | --- | --- |
| 8/3/79 | 8.4 | Court appearance on petition, regarding investment of proceeds from sale of real estate; office conference with client; telephone conversations with various bank officers regarding depositing proceeds of sale from real estate; travel to various banks to make required deposits. Many details. |
| 8/6/79 | 4.5 | Concluded travel to banks to establish estate's bank accounts; conference with client; read letter from attorney Clifford C. Benson; letter to attorney Clifford C. Benson. Many details. |
| 11/8/79 | 1.6 | Worked on petition for reinvestment of estate's funds. |
| 11/12/79 | 3.4 | Conference with client; letter to Internal Revenue Service; worked on preparation of proposed order authorizing reinvestment of estate funds. Review of details. |
| 11/13/79 | 9.8 | Court appearance to obtain order authorizing reinvestment of estate funds; travel to banks to invest |

| | | estate funds in certificates of deposit. Details. |
|---|---|---|
| 11/14/79 | 1.0 | Reviewed and organized file. |
| 12/10/79 | 2.3 | Acquired interest information from banks; telephone calls to national banks in which estate's funds were deposited; conference regarding preparation and filing of estate's income tax return. Attention to details. |
| 12/11/79 | 1.3 | Office conference with client; travel to banks regarding investment of estate's funds; discussion of preparation of tax returns. |
| 5/13/80 | .8 | Telephone call to client; conference with manager of Pacific Bank, Tacoma Mall branch, regarding investment of estate funds in treasury bills. |
| 5/15/80 | 4.3 | Conference with client; court appearance to obtain signature on order authorizing reinvestment of estate funds; travel to banks to close certificate of deposit accounts and to purchase treasury bills. |
| 7/28/80 | 7.5 | Court appearance to obtain order authorizing partial distribution; conference with client; travel to banks to transfer funds into estate's checking account; letter to heirs. Much detail. |
| 8/14/80 | 2.5 | Arranged for investment of proceeds from 14–week treasury bills into three passbook savings accounts; reviewed file. Details. |
| Total | 47.4 at $75/hour = $3,555 | |

The estate lawyers spent substantial amounts of time in depositing over $400,000 in proceeds from the sale of the real estate in various savings accounts paying only 5½ percent interest. Acting upon the advice of the attorney for the Swedish heirs, the estate lawyers finally used these funds to secure treasury bills and certificates of deposit which achieved a much higher rate of return. The time records on which the lawyers base their fee clearly establish that the personal representative was billed $75 per hour for approximately 47.4 hours of attorney time in depositing and redepositing these funds.

Uncontroverted expert testimony stated a general practitioner with approximately 3 hours' time utilizing outside services, such as a good bank investment department, could have invested the proceeds from the sale of the real estate using treasury notes or other investment vehicles whereby amounts can be withdrawn without penalty.

The estate attorneys breached their fiduciary obligations to the heirs by failing to seek a more beneficial rate of return on the short–term investment of these funds and by charging for excessive amounts of time spent in investing estate moneys.

### PREPARATION OF TAX RETURNS

The administration of this estate required federal estate and income tax returns, and a Washington inheritance tax return. The administrator's expert witness stated the returns did not require calculation of complicated deductions or exemptions. Report of Proceedings, at 116. The following is a summary of the days during which preparation of the tax returns appears to be the primary legal service.

### INHERITANCE AND ESTATE TAX RETURNS

| Day | Hours | Description |
|-----|-------|-------------|
| 8/22/79 | 9.7 | Telephone call to Jack Winn of Professional Forestry Services, Inc., regarding appraisal; tele- |

| | | |
|----------|-----|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| | | phone call to Inheritance Tax Division of State of Washington; worked on preparation of state inheritance tax return; calculated time incurred on estate file; determination of what was required to process estate further. Many details. |
| 8/23/79 | 1.0 | Obtained forms and instructions from Internal Revenue Service office for preparation of form 706. Worked on details. |
| 8/24/79 | 3.1 | Telephone call to Jack Winn of Professional Forestry Services, Inc.; worked on preparation of federal estate tax returns. Details. |
| 9/18/79 | 3.4 | Worked on preparation of federal estate tax return; worked on preparation of state inheritance tax return; telephone call to client. Details. |
| 9/26/79 | .2 | Worked on preparation of federal estate tax return. |
| 9/28/79 | 3.0 | Telephone call to estate tax division of the Internal Revenue Service; worked on preparation of federal estate tax return. |
| 9/29/79 | 5.0 | Preparation of final drafts of federal estate tax return and state inheritance tax return and supporting schedules and documentation. |
| 10/1/79 | .2 | Prepared schedule of deductions on federal estate tax return. |
| 10/5/79 | 5.1 | Preparation of final drafts of state inheritance tax return and federal estate tax return. |

ESTATE INCOME TAX RETURN

| | | |
|---|---|---|
| 12/10/79 | 2.3 | Acquired interest information from banks; telephone calls to national banks in which estate's funds were deposited; conference, re: preparation and filing of estate's income tax return. Attention to details. |
| 1/2/80 | 1.1 | Telephone call from attorney Clifford C. Benson; memo to file, re: fiscal year proposal; conference, regarding income tax deductions and distribution of income to heirs. |
| 2/20/80 | 1.3 | Conference, regarding preparation of income tax returns for estate and fiscal year determination; researched law on fiscal year determination; conference, regarding Swedish heirs. |
| 2/21/80 | .6 | Conference regarding income tax returns of the estate and estimated income earned by the estate. |
| 2/28/80 | 2.4 | Arranged for payment of bond premium; telephone call to Hagen Insurance Company; researched law on determination of fiscal year. Attention to details. |
| 3/10/80 | .3 | Telephone conversation with legal assistant at attorney Clifford C. Benson's office, regarding preparation of 1041. |
| 3/11/80 | .5 | Worked on determining interest income information for reporting 1041 for estate. |
| 4/17/80 | .4 | Reviewed file regarding interest income information, income tax |

| | | |
|---|---|---|
| | | returns, determination of heirs. |
| 9/13/80 | 8.5 | Prepared rough drafts of estate's income tax returns, reviewed file regarding heirs and receipts received on partial distribution; letter to Agnes Brown; telephone call to client; worked on proof heirship of American heirs; letter to Ivan Swanson, estate of Albert Swanson, Arthur Swanson, Gordon Keller, Agnes Brown. Much detail; problems with proof. |
| 9/29/80 | 1.5 | Obtained forms from Internal Revenue Service office for preparation of estate's income tax return; letter to attorney Clifford C. Benson. |
| 9/30/80 | 3.0 | Reviewed files; telephone call to Frank Messina, C.P.A.; worked on preparation of 1041's for estate; reviewed interest income information. |
| Total | 52.6 | at $75/hour = $3,945 |

The testimony by the estate's expert witness, Marshall Adams, indicates that estate tax returns prepared by the Manza firm in 50 hours, could have been prepared in 16 hours by a reasonably experienced probate attorney. We agree with Adams, *In re Estate of Enos,* 69 Ill. App. 3d 129, 386 N.E.2d 1147 (1979).

■ Other courts which have reviewed claims of excessive hours have looked at such factors as the amount of time actually spent as compared to the amount of time an experienced attorney would spend, the duplication of work by attorneys or staff, and the amount of attorney time spent on administrative tasks. *See Larionoff v. United States,* 365 F. Supp. 140 (D.D.C. 1973); *Bowl Am., Inc. v. Fair Lanes, Inc.,* 299 F. Supp. 1080 (D. Md. 1969); *Advance*

*Business Sys. & Supply Co. v. SCM Corp.,* 287 F. Supp. 143 (D. Md. 1968), *aff'd,* 415 F.2d 55 (4th Cir. 1969), *cert. denied,* 397 U.S. 920 (1970); *Henlopen Hotel Corp. v. Aetna Ins. Co.,* 251 F. Supp. 189 (D. Del. 1966); *In re Estate of Bacheller,* 437 S.W.2d 132 (Mo. Ct. App. 1968); *In re Estate of Fraiman,* 408 Pa. 442, 184 A.2d 494 (1962).

The attorney responsible for the probate of this estate testified that his primary area of practice involves personal injury and wrongful death. The testimony is uncontroverted that an inordinate amount of time was spent on investing estate moneys and preparing returns for an estate that presented no difficult or complex legal or administrative problems. Reason and fairness compel us to observe that clients should not be expected to pay for the education of a lawyer when he spends excessive amounts of time on tasks which, with reasonable experience, become matters of routine. *In re Estate of Fraiman, supra.*

Nor should a client be expected to pay for work that is duplicative. *Larionoff v. United States, supra; Bowl Am., Inc. v. Fair Lanes, Inc., supra; Advance Business Sys. & Supply Co. v. SCM Corp., supra; Henlopen Hotel Corp. v. Aetna Ins. Co., supra.* A review of the record indicates that Michael Manza and Patrick Manza duplicated their efforts. At times they worked together on the same project or attended the same ex parte court hearing.

Moreover, an attorney is not entitled to fees at professional legal rates for tasks that should be performed by staff, such as depositing checks in a bank. *In re Estate of Bacheller, supra.* The record reveals that Patrick Manza spent much of his time engaged in matters which could have been done by the law firm staff, such as trips to the Internal Revenue Service to pick up forms and trips to different banks to deposit funds.

When a probate attorney elects to base his fees primarily on the number of hours worked multiplied by an hourly rate, his fiduciary obligations dictate that he charge the estate only for those hours which are reasonably necessary in probating the estate. In defending against any objections

to the fee raised by interested heirs, the estate attorney must assume the burden of proving that the hours charged to the estate were necessary. The record in the present case clearly shows that the estate lawyers did not meet this burden. We, therefore, reverse and remand to the trial court the issue of the reasonableness of the attorney fee in probating the estate. In making this decision, the court should determine whether the hours billed to the estate by the Manza firm were reasonable and necessary in completing the probate of Mr. Larson's estate. In determining a reasonable fee, the court shall assume $75 is a reasonable hourly charge for this type of work by a competent attorney based on the testimony. The $75 an hour was a reasonable hourly charge, as Patrick Manza had performed the majority of the work while an intern and a relatively inexperienced attorney. This was not challenged on appeal.

## Fees Incurred in Defending Objection to Fees

The court commissioner and superior court judge awarded the Manza firm $16,350 to be paid out of the estate for fees and costs incurred in defending against the objections to Manza's fees and the subsequent motion for reconsideration. The objectors contend this award violates public policy by penalizing victimized parties from legitimately challenging attorney fee requests in probate proceedings. We agree.

The record indicates that part of the attorneys' time spent in preparation to meet the objections was included in the original fee request of $23,145. The court commissioner then awarded an additional $10,000 to the estate lawyers for attorney fees for preparation on objections and for trial on the reasonableness of fees. We set this award aside.

In defending a challenge to a requested attorney fee in a final report in probate, the attorney is a real party in interest. *In re Estate of Peterson,* 12 Wn.2d 686, 714, 123 P.2d 733 (1942). In *In re Adamec,* 100 Wn.2d 166, 667 P.2d 1085 (1983), we held, in the context of guardianship pro-

ceedings, fees incurred by an attorney in defending his own interest could not be awarded under RCW 11.92.180. Similarly, we have denied recovery of expenses incurred by the executor of an estate when the expenses were incurred in her own interest, and not for the benefit of the estate. *In re Estate of Riemcke,* 80 Wn.2d 722, 497 P.2d 1319 (1972). The only issue in the hearing on the final report in the instant case was the attorney fee. The attorneys' defense to the objections served only their own interests and in no way worked to the benefit of the estate. Indeed, under the trial court ruling, the value of the estate was reduced in direct proportion to the amount the court increased the attorney fee. We reverse the Court of Appeals and the trial court and hold that an attorney in probate is not entitled to additional fees for attorneys and experts in proving the reasonableness of his fee in the final report. The estate attorneys are entitled to a reasonable attorney fee for the preparation on the first two objections, provided such time is not included in the 364.5–hour affidavit.

## OBJECTORS' FEES

 Finally, we observe that on remand the objectors should be awarded attorney fees for the trial and appeal of this case under RCW 11.76.070.[4] While the award of attor-

---

[4]RCW 11.76.070 provides:

"If, in any probate or guardianship proceeding, any personal representative shall fail or neglect to report to the court concerning his trust and any beneficiary or other interested party shall be reasonably required to employ legal counsel to institute legal proceedings to compel an accounting, or if an erroneous account or report shall be rendered by any personal representative and any beneficiary of said trust or other interested party shall be reasonably required to employ legal counsel to resist said account or report as rendered, and upon a hearing an accounting shall be ordered, or the account as rendered shall not be approved, and the said personal representative shall be charged with further liability, the court before which said proceeding is pending may, in its discretion, in addition to statutory costs, enter judgment for reasonable attorney's fees in favor of the person or persons instituting said proceedings and against said personal representative, and in the event that the surety or sureties upon the bond of said personal representative be made a party to said proceeding, then jointly against said surety and said personal representative, which judgment shall be enforced in the same manner and to the same extent as judgments in ordinary civil actions."

ney fees under the statute is discretionary, persons object-
ing to the final report are entitled to such an award to the
extent the items in the report which are disapproved bene-
fit the estate. *In re Estate of Riemcke, supra; In re Estate
of Hamilton,* 73 Wn.2d 865, 441 P.2d 768 (1968). The trial
court should, on remand, determine an appropriate attor-
ney fee award to the objectors for their services in the trial
and appellate courts. Along with the factors enumerated in
CPR DR 2–106(B), the trial court should consider the
overall benefit, if any, to the estate of the objectors' actions.

## CONCLUSION

The area of probate is particularly subject to attorney fee
abuse when the estate involved is substantial and the law-
yer is reasonably assured of favorable results and payment.
*See* Brown, *Some Observations on Legal Fees,* 24 Sw. L.J.
565 (1970). An estate attorney must assume the burden of
proving that the hours charged to the estate were reason-
able and necessary. We, therefore, reverse and remand the
issue of reasonableness of fees to the trial court. We also
hold that an attorney in probate is not entitled to an addi-
tional fee in proving the reasonableness of his fee in the
final report.

Finally, we hold that if the objectors here can demon-
strate an overall benefit to the estate, they are entitled to
reasonable attorney fees pursuant to RCW 11.76.070.

CUNNINGHAM and HAMILTON, JJ. Pro Tem., concur.

WILLIAMS, C.J. (concurring in the result only)—I agree
with the majority that the time required, not the time
expended, is a factor in the determination of the reason-
ableness of attorney fees. I disagree, however, with the
majority's conclusion that the investment of estate funds
constituted a breach of fiduciary duty. Neither the record
nor the parties' arguments support such a conclusion. I thus
concur only in the result reached by the majority.

BRACHTENBACH, J., concurs with WILLIAMS, C.J.

PEARSON, J. (dissenting)—The issue in this case is the overall reasonableness of the attorney fee requested to probate the Larson estate, not merely whether the Manzas have proven that every hour spent was necessary. The evidence in this case shows that the attorneys for the estate (Manzas) have met the burden of proving that the fee charged for the probate was reasonable. The evidence presented by the objectors is not sufficient to prove otherwise. I therefore dissent and would hold that the $23,145 fee requested and approved by the trial court is amply supported by the record as a reasonable award.

I agree with the majority that no attorney fees should be awarded for merely proving the reasonableness of attorney fees. I would therefore remand for a determination of the number of hours spent by the Manzas preparing to meet the two objections that were unrelated to attorney fees. I would then award attorney fees for time spent on those objections only. I would not award any other fees to either party in this case on appeal.

### THE $23,145 FEE FOR PROBATE
### OF THE LARSON ESTATE

Applying either the case law factors set out in *In re Estate of Peterson,* 12 Wn.2d 686, 123 P.2d 733 (1942) or CPR DR 2–106(B) as the standard, the Manzas have provided sufficient evidence to justify the fee requested under the relevant criteria.

One criterion is the novelty or complexity of the questions involved. The majority characterizes this estate as one presenting "no novel or difficult legal or administrative problems", and states that the heirship determination was accomplished with "only minor difficulties". Majority, at 522–23. I do not agree.

In fact, an expert for the objectors, Mr. John R. Stair, an experienced practitioner from Seattle, testified that the heirship question was "terribly complicated" and that the work done by the Manzas in relation to that question was justifiable. Furthermore, Mr. Stair stated that in his opin-

ion the tax treaty question was so complex as to require a tax expert. Yet, Patrick Manza prepared the tax returns himself; nobody has criticized his performance of that task. Thus, at least two novel or difficult areas were identified by the objectors' expert that would justify an increased number of hours and an increased fee.

Additionally, the majority's assertion that the estate has been required to pay for the "education" of Patrick Manza is unsubstantiated by the record. One expert for the estate, Mr. Elvin Vandeberg, an experienced practitioner from Tacoma, decreased the amount of the fee by 25 percent to compensate for inexperience on the part of Patrick Manza. Mr. Vandeberg's opinion of a reasonable fee for probating this particular estate was $25,115.50. This estimate was almost $2,000 *more* than the amount requested by the Manzas and was arrived at *after* he deducted $5,240 to allow for any extra hours spent by Patrick Manza.

The majority charges that neither Elvin Vandeberg nor Marshall Adams, the estate's other expert, addressed the necessity of the hours spent by the Manzas, but rather that these experts assumed that 364.5 hours were necessary to close the estate. Both experts, in fact, reviewed the probate files in this case and both interviewed the Manzas regarding this case. Marshall Adams, also an experienced practitioner from Tacoma, then specifically testified that he had considered the time records and amount of time involved in the case. In his opinion, $35,000 would be a reasonable fee in this case.

Moreover, while Mr. Adams and Mr. Vandeberg did not specifically state that every hour spent was necessary, implicit in their opinions is the fact that the hours spent were necessary. Clearly, the overall fee could not be considered reasonable by these experts if numerous unnecessary hours were spent.

Significantly, Mr. Adams testified that in some probate cases, the fee properly may be based on factors other than hours required or spent. These factors include the time and degree of novelty involved and the results obtained, as well

as the general "pain and suffering" experienced by the attorney in dealing with a particular estate. Based on all of these factors, a reasonable fee is set by the attorney. In Marshall Adams' opinion, the Larson estate warrants a $35,000 attorney fee, based on all of the relevant factors, rather than on any one factor.

Marshall Adams properly considered, in stating that $35,000 would be a reasonable fee, that the estate was saved approximately $20,000 in commissions on the sale of the timberland through use of a forestry service company rather than a real estate broker. Mr. Adams indicated that he considered this as merely one factor in setting the reasonable fee.

While it is true that Mr. Swanson, the administrator, originally suggested the use of a forestry service company to the Manzas, the Manzas did all of the work in selling the land. The very favorable result reached in that sale was due in considerable part to the efforts of the Manzas as brokers for the sale. Mr. Swanson merely gave the Manzas the name of a forestry company; the Manzas contacted the company, negotiated the terms for the appraisal and sale, prepared 104 prospectuses, took bids and conducted the sale. The Manzas exercised excellent professional judgment in pursuing the suggestion of the administrator. Certainly, that course involved considerably more work by the Manzas than use of a real estate broker. Regardless of who originally suggested the use of the forestry company, the expert properly considered the extra work and favorable result obtained as relevant factors in setting an overall reasonable attorney fee.

The majority accords great weight to the testimony of the objectors' expert, Mr. Stair, as to the number of hours necessary to probate the Larson estate. I disagree that Mr. Stair's testimony is entitled to that degree of weight.

Mr. Stair stated that he does not now, and never has, employed legal assistants in probate work. Yet, in his opinion, 48 hours of the work on the Larson estate could have been done by such assistants. The Manzas likewise testified

that they do not employ legal assistants in probate work. Mr. Stair did not explain why he does not find it proper or necessary to employ legal assistants in his own probate practice, yet finds it unreasonable that the Manzas do not use these assistants. Presumably, Mr. Stair would necessarily characterize his own fees as unreasonable in every probate case. Furthermore, the term "legal assistant" was not defined by Mr. Stair, so this court has no way to decide whether his opinion regarding the use of such assistants is valid. The majority further holds that the Manzas breached their fiduciary duty to maximize the rate of return on estate assets. A careful review of the record proves that the Manzas acted to protect the estate and its heirs and had a reasonable basis for investing the sale proceeds in savings accounts at various Tacoma banks.

The Manzas were aware that the estate taxes would be substantial and that these taxes would have to be paid within 9 months of Larson's death to avoid interest and penalties. In fact, the Washington inheritance tax was $95,113.64; the federal tax was $79,122.87. The combined taxes amounted to approximately one–third of the value of the estate. Interest and penalties on that amount would not have been insignificant.

Accordingly, to avoid the interest and penalties, the Manzas needed to have the funds readily available to pay these taxes when due. They purposely avoided placing the funds in long–term investments that would result in large withdrawal penalties.

Furthermore, the Manzas operated under a court order to place the money in insured savings accounts pending determination and payment of the taxes, and subject to withdrawal only by court order. The court order required the money to be placed in savings accounts in sums of $38,000 each, so as to stay below the $40,000 maximum insurance level. That order was dated August 3, 1979.

The taxes were paid approximately 2 months later. Meanwhile, the Manzas had been working to obtain the heirship certificate for all of the Swedish heirs; they

expected to receive this certificate at any time. Thus, they did not act to place the remaining funds into higher interest, long–term investments immediately upon payment of the taxes. Rather, they desired to keep the money available for immediate distribution upon receipt of the heirship certificate. This desire was well justified. Many of the Swedish heirs were elderly; one had already died awaiting distribution and another had been placed in an institution.

However, the Manzas were then informed by the attorney for these Swedish heirs that the certificate of heirship would take longer to obtain than previously expected. That attorney suggested that long–term investments might now be appropriate. In November 1979, the Manzas moved to place the funds in higher–yield investments, knowing that final distribution had been indefinitely delayed.

The only testimony critical of the investments made by the Manzas was that of Mr. Stair. He testified that, in his opinion, the Manzas should have used "some Government medium" of investment "whereby you can withdraw necessary . . . funds and not suffer an interest penalty". Mr. Stair did not testify that he knew of any government medium in which funds could be placed for only 2 months and withdrawn without a penalty; he did not state what particular mediums were available in 1979 that would have met the specific needs of the Larson estate. Thus, his testimony does not overcome the testimony by the Manzas regarding the need to invest as they did.

Furthermore, the Manzas did state that they had made inquiries as to the best manner of investing the proceeds before proceeding as they did. Therefore, the preponderance of evidence shows that the Manzas studied the options and, based on the particular needs of the Larson estate, chose to invest in savings accounts until the taxes had been paid. In the absence of testimony that alternative investment options existed that would have both met the needs of the estate and offered higher interest rates, this record does not show the Manzas breached their fiduciary duties.

The majority also asserts that the number of hours spent

investing these funds was unreasonable. Mr. Stair testified that the investments could have been accomplished in 3 hours, rather than 47 hours.

Conversely, Mr. Adams and Mr. Vandeberg testified that the entire attorney fee requested by the Manzas was reasonable. These two experts were aware of the time spent making the various investments and that time was considered by them in stating their opinions as to the overall reasonableness of the fee.

Additionally, the approximately 47 hours cited by the majority as time spent by the Manzas investing the funds includes many tasks which are unrelated to investing the funds:

| Date | Total Hours Spent | Description of Tasks Included in Total Hours Not Related to Investment of Funds |
|------|------|------|
| 8/3/79 | 8.4 | Office conference with client |
| 8/6/79 | 4.5 | Conference with client; reading and writing correspondence |
| 11/12/79 | 3.4 | Conference with client; correspondence with IRS |
| 11/14/79 | 1.0 | Reviewed/organized file |
| 12/10/79 | 2.3 | Conference re tax returns |
| 12/11/79 | 1.3 | Conference with client; discussion re tax returns |
| 5/13/80 | .8 | Call to client |
| 5/15/80 | 4.3 | Conference with client |
| 7/28/80 | 7.5 | Court appearance; conference with client; letter to heirs |
| 8/14/80 | 2.5 | Review of file |

An *undetermined number* of hours was spent on unrelated tasks. Thus, the majority's contention that nearly 47 hours were spent depositing and redepositing funds is unfair to the attorneys in this case.

Finally, the majority objects to the number of hours

spent by the attorneys in preparation of the tax returns. Federal estate and federal income tax returns, as well as a Washington inheritance tax return, were prepared by Patrick Manza.

The majority relies heavily on the testimony of Mr. Adams. This reliance is misplaced as to the tax return question. Mr. Adams testified that he considered the total amount of time spent in the preparation of the tax returns in forming his opinion that $35,000 would be a reasonable attorney fee in this case. On cross examination by the objectors, his testimony becomes confused as to which returns are being discussed. His opinion that at least 16 hours would be required for tax return preparation appears to relate to only one set of the tax returns. Mr. Adams gave no opinion as to the total number of hours necessary to prepare all three sets of tax returns. Thus, his testimony has little value as to that specific question.

Again, the approximately 50 hours attributed to tax preparation by the majority also includes numerous other activities related to different aspects of the estate: telephone calls to client, calls to Jack Winn regarding appraisal, calls to banks regarding investment of funds, conferences regarding heir determination, calls to insurance company, letters written, review of file, work on proof of heirship. Clearly, the evidence presented by the Manzas that their overall fee is reasonable is not controverted by this evidence.

In sum, I cannot agree that this record shows that "an inordinate amount of time was spent on investing estate moneys and preparing returns for an estate that presented no difficult or complex . . . problems." Majority, at 531. Actually, the Manzas presented evidence that the fee requested was reasonable under the particular circumstances of the Larson estate. The record also shows that the estate presented both novel and complex heirship and tax treatment questions. The fee award of $23,145 should be upheld.

### Fees Incurred in Defending Objections to Final Report

I fully agree that no fee should be awarded for merely defending the original attorney fee charged in a probate case. However, in this case considerable time was spent by the Manzas in preparing to defend against two objections unrelated to attorney fees which were abandoned just prior to the hearings. These hours should be compensated out of the estate funds.

Thus, I would remand for a determination of hours spent preparing to defend against the first two objections as opposed to hours spent preparing to defend attorney fees only. The commissioner's allowance of $10,000 should be adjusted accordingly. I would allow no other fees to either party in this case.

UTTER, DOLLIVER, and DIMMICK, JJ., concur with PEARSON, J.