IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Estate of: | ) | No. 35579-9-III |
| | ) | (consolidated w/ |
| EDWARD AMOS COMENOUT, JR., | ) | No. 35816-0-III) |
| | ) | |
| Deceased. | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |

PENNELL, A.C.J. — The estate of Edward Amos Comenout, Jr. appeals several orders issued by the Spokane County Superior Court, sitting in probate. We affirm the superior court's order disbursing federal settlement funds directly to the estate's heirs. However, we remand for further findings regarding the request for interim payment of attorney fees by the estate's attorney/special administrator.

FACTS

Mr. Comenout died testate on June 4, 2010.  He was unmarried, had no children, was a resident of Pierce County, Washington, and was a member of the Quinault Indian Nation.  Mr. Comenout possessed an off-reservation public domain allotment, or trust property, in Puyallup, Washington.

Mr. Comenout's last will and testament left all of his "Indian trust real property in equal undivided shares as joint tenants with rights of survivorship, and income earned by said property in equal shares" to his great-nephews: Richard Gardee, Christopher Gardee, William Gardee, and Edward Comenout, III.  Clerk's Papers (CP) at 217.  Mr. Comenout's will also left "a [one-fifth] life estate in favor of Martina Ann Garrison," his great-niece.  *Id*.  Ms. Garrison died in September 2016.  Mr. Comenout's great-nephews "are eligible to hold property in trust status."  *Id*.

At the time of Mr. Comenout's death, a class action lawsuit was pending in the United States District Court for the District of Columbia, alleging the federal government had mismanaged Indian trust funds and assets.  *See Cobell v. Salazar*, 387 App. D.C. 339, 573 F.3d 808 (2009).  Mr. Comenout never participated in the *Cobell* litigation or made any claims for relief.  Several months after Mr. Comenout's death, the federal government approved a nationwide settlement for Indian trust beneficiaries pursuant to

2

the *Cobell* litigation. *See* CLAIMS RESOLUTION ACT OF 2010, Pub. L. No. 111-291, 124 Stat. 3064.

On September 22, 2010, retired tribal judge Mary L. Pearson was named special administrator of Mr. Comenout's estate in the Spokane County probate. Judge Pearson thereafter submitted a claim for the *Cobell* funds applicable to Mr. Comenout's Indian trust land.

In December 2012, the United States Department of the Interior, through its Bureau of Indian Affairs (the Department), probated Mr. Comenout's Indian trust assets via an "Order Approving Will And Decree Of Distribution." CP at 215-17. This order distributed Mr. Comenout's Indian trust real property according to the terms of his will.[1] In addressing potential claims against Mr. Comenout's estate, the order noted that the only money in Mr. Comenout's Individual Indian Money (IIM) account was $108.56 and that " 'money generated after the decedent's date of death belongs to the heirs or devisees . . . [and money] that accrues after the date of the decedent's death from trust or restricted property is not available for payment of claims against the estate.' 73 Fed. Reg. 67,263 (November 13, 2008); 43 C.F.R. §30.146." *Id*. at 216 (alteration in original).

---

[1] An inventory of the "trust or restricted property, real and personal," in Mr. Comenout's possession at the time of his death was attached to the order, but that inventory is not included in the record on appeal. CP at 215.

On September 19, 2014, almost two years after the Department's decree of distribution, a *Cobell* settlement check for $29,514.58 was issued to Mr. Comenout's estate in care of Judge Pearson as personal representative.

Judge Pearson died in March 2015. Robert Kovacevich, the attorney for the estate, was appointed as the successor special administrator.[2]

In April 2016, the Department issued an order for "Modification To Add And Distribute Omitted Property" regarding Mr. Comenout's estate. *Id*. at 219-20. The modification order noted Mr. Comenout's IIM account was part of the estate's trust assets. As such, the order distributed the IIM account balance in accordance with Mr. Comenout's will. In a footnote to its order, a probate judge for the Department commented that the distribution did not include "funds from the Cobell Settlement." *Id*. at 219.

---

[2] Mr. Kovacevich was never named a personal representative of the estate. On April 3, 2015, he was appointed solely as a special administrator under chapter 11.32 RCW. The powers of a special administrator are limited by statute and related court orders. A special administrator is authorized to "collect all the goods, chattels, money, effects, and debts of the deceased . . . and for that purpose may commence and maintain suits as an administrator, and may also sell such perishable and other goods as the court shall order sold, and make family allowances under the order of the court." RCW 11.32.030. A special administrator is only to be appointed as a temporary measure, when there is a delay in granting letters testamentary or of administration. RCW 11.32.010.

On March 13, 2017, Mr. Kovacevich, as attorney and special administrator for the Comenout estate, filed a motion in Spokane County Superior Court for payment of interim fees and costs. He requested $49,000.00 for his office and $5,006.80 for Judge Pearson's estate. Mr. Kovacevich's motion identified the *Cobell* funds as estate assets. Mr. Kovacevich represented to the superior court that the total funds available in Mr. Comenout's estate were $55,723.88. If Mr. Kovacevich's fee request was granted, it would leave a $1,717.08 balance in the estate.

The Gardee heirs objected to Mr. Kovacevich's requested disbursal and argued that the *Cobell* settlement funds should not be part of Mr. Comenout's estate. The heirs argued that the *Cobell* settlement funds were designed to compensate Indian trust beneficiaries for mismanagement by the Department of Indian trust income and assets; and because Mr. Comeonout's great-nephews were also enrolled tribal members, they equally possessed an interest in the trust property and the funds should be disbursed to them. On June 12, 2017, the Gardees then moved to disburse the *Cobell* funds, reiterating their argument that the funds were not an asset of the Comenout estate and that they should be disbursed in equal shares to the four heirs of the estate.

On August 9, 2017, Mr. Kovacevich filed a motion for payment of additional fees, specifically for his work from March through July 2017. On August 11, the superior

court held a final hearing on Mr. Kovacevich's first motion for payment of fees and the

Gardees' motion for disbursal of the *Cobell* funds. In an order filed August 28, the court

granted the Gardees' motion to disburse the *Cobell* funds and approved in full payment of

fees to Judge Pearson's estate. However, the court only allowed $20,000.00 in fees to

Mr. Kovacevich. The court explained that it had "concerns about the reasonableness of

the hours billed and detailed in the records before the Court as to any amounts in excess

of $20,000.00." CP at 349-50. Mr. Kovacevich filed a notice of appeal on behalf of the

Comenout estate in regard to this decision, specifically as to the disbursement of the

*Cobell* funds and the failure to grant payment for fees in excess of $20,000.00.

After holding a hearing on Mr. Kovacevich's second motion for interim fees, on

December 14, 2017, the superior court entered an order denying Mr. Kovacevich's

request for additional fees and, by separate order, entered a stay on the matter of fees until

the appellate court addressed the appeal involving Mr. Kovacevich's first fee application.

During the hearing, the court noted that it needed "to look at the totality of the estate and

all of its beneficiaries and the attorney's fees do affect the estate at the end of the day

because they affect the degree of insolvency." Report of Proceedings (Dec. 8, 2017) at

11. On behalf of the estate, Mr. Kovacevich also appealed these two additional orders.

Both appeals have been consolidated for review.

6

ANALYSIS

*The* Cobell *settlement check*

The Comenout estate contends the superior court erred in distributing the *Cobell* settlement funds to Mr. Comenout's heirs because the settlement check was made payable to the estate, and the Department had already held that the *Cobell* settlement funds were not included within Mr. Comenout's IIM account, which was distributed to Mr. Comenout's heirs.

We disagree with the estate's analysis. Neither the wording of the distribution check nor the 2016 modification order control the nature of the *Cobell* funds. Going to the first issue, the fact that the check was made payable to Mr. Comenout's estate, rather than the individual heirs, appears to have been due to the fact that it was the estate's special administrator, Judge Pearson, who submitted the claim for the funds. Judge Pearson did not have the power to dictate the character of the funds simply because she submitted a claim for disbursement prior to submission of any individual claims by Mr. Comenout's heirs. With respect to the second issue, the 2016 modification order cannot fairly be read as determining whether the *Cobell* check should be classified as property of the estate or of the individual heirs. The modification order only purported to clarify the distribution of funds that existed in Mr. Comenout's IIM account at the time of the 2012

distribution order. At the time of the 2012 order, the *Cobell* funds had not yet been awarded. Thus, it would have been inappropriate for the modification order to address those funds.

Rather than look to the payee noted on the *Cobell* check or the 2016 modification order, our assessment of the nature of the *Cobell* funds is determined by the terms of the 2012 distribution decree and governing law.

The Department's 2012 distribution decree stated, "money generated after the decedent's date of death belongs to the heirs . . . [and money] that accrues after the date of the decedent's death from trust or restricted property is not available for payment of claims against the estate." CP at 216 (alteration in original) (quoting INDIAN TRUST MANAGEMENT REFORM, 73 Fed. Reg. 67,263 (Nov. 13, 2008); *see also* 43 C.F.R. §§ 30.101, .102, .146, .147; 25 C.F.R. § 15.10.

Based on the terms of the 2012 distribution decree and the applicable law, the *Cobell* funds were generated after Mr. Comenout's death and, therefore, belong to the heirs of his estate. Prior to Mr. Comenout's death, the *Cobell* settlement had not been finalized. Mr. Comenout was not a named plaintiff in the *Cobell* case and he never made a claim for damages. It was only after Mr. Comenout died that his Indian trust property became eligible for *Cobell* funds. Given these circumstances, the *Cobell* money

constituted funds that accrued after Mr. Comenout's death. *First-Citizens Bank & Trust Co. v. Harrison*, 181 Wn. App. 595, 603, 326 P.3d 808 (2014) (The term "accrue" is synonymous with "paid" or "distributed."); s*ee also* RCW 11.44.015 (The property of the decedent's estate is limited to property owned by the decedent as of the date of death.). As such, the *Cobell* funds belonged to Mr. Comenout's heirs, not the estate.

The superior court properly granted the motion to distribute or disburse the *Cobell* settlement funds to Mr. Comenout's heirs. Because the *Cobell* funds belong to the estate's heirs, the money cannot be used to pay for claims against the estate, including claims lodged for estate administration or other legal fees.

*Mr. Kovacevich's initial fee application*

Mr. Kovacevich, as special administrator for the Comenout estate, claims the superior court erroneously reduced his request for interim attorney/administration fees and costs.

Generally, a reviewing court will not interfere with an award of attorney fees in probate matters unless there are facts and conditions showing a clear abuse of discretion. *In re Estate of Larson*, 103 Wn.2d 517, 521, 694 P.2d 1051 (1985); *In re Estate of Black*, 116 Wn. App. 476, 489, 66 P.3d 670 (2003). When evaluating attorney fee requests in probate proceedings, a trial court shall consider:

> "[T]he amount and nature of the services rendered, the time required in performing them, the diligence with which they have been executed, the value of the estate, the novelty and difficulty of the legal questions involved, the skill and training required in handling them, the good faith in which the various legal steps in connection with the administration were taken, and all other matters which would aid the court in arriving at a fair and just allowance."

*Larson*, 103 Wn.2d at 522 (quoting *In re Estate of Peterson*, 12 Wn.2d 686, 728, 123 P.2d 733 (1942)). "When a probate attorney elects to base his [or her] fees primarily on the number of hours worked multiplied by an hourly rate, . . . fiduciary obligations dictate that he [or she] charge the estate only for those hours which are reasonably necessary in probating the estate." *Larson*, 103 Wn.2d at 531.

The six and one-half years of billing records submitted with Mr. Kovacevich's initial interim fee application document over $117,000 in fees and costs, of which the fees attributed to Mr. Kovacevich (approximately 460 hours of work totaling over $102,000)[3] are prominent. The time entries begin on July 16, 2010, with work related to a failed Pierce County probate, and end on February 28, 2017. Mr. Kovacevich worked solely in his capacity as attorney for the Comenout estate from the onset of billing until April 3, 2015, when he was appointed successor special administrator of the estate. According to

---

[3] According to the billing records, Mr. Kovacevich wrote off nearly 80 hours of additional time, totaling approximately $18,000, during the fee application period.

the interim billing records, in his nearly two years after becoming special administrator,

Mr. Kovacevich billed over 180 hours totaling approximately $41,000 (he wrote off an

additional 43.5 hours totaling nearly $10,000 during this time period). The billing entries

submitted by Mr. Kovacevich appear to encompass subject matter outside the Spokane

County probate.

In its order partially granting Mr. Kovacevich's request for $49,000 in fees and

costs, the court explained that it had "concerns about the reasonableness of the hours

billed and detailed in the records before the Court as to any amounts in excess of

$20,000." CP at 349-50. There is nothing else in the record on appeal providing further

reasoning for the superior court's denial of Mr. Kovacevich's request for payment of the

additional $29,000 in fees.[4]

The current record is insufficient to enable meaningful review of the superior

court's fee decision. We therefore remand this matter for entry of findings of fact and

conclusions of law on the issue of fees.[5] In assessing Mr. Kovacevich's fee request on

---

[4] We also note that the Comenout estate has not designated the entire report of proceedings applicable to Mr. Kovacevich's initial request for interim fees.

[5] Given our disposition of this appeal, it appears that there may be no additional funds available in the estate to pay fees. Should all interested parties agree that further proceedings would not be warranted on remand, they may agree to reinstitution of the existing attorney fee award.

remand, the superior court should consider not only the reasonableness of the rate and time charged, but also whether the matters billed by Mr. Kovacevich and his staff were relevant to Mr. Kovacevich's representation of the estate in Spokane County Superior Court or to his role as special administrator. Having reviewed the billing records ourselves, we believe the superior court may wish to require Mr. Kovacevich to prepare his best estimate of the total attorney fees and costs attributable to each of the matters pursued or defended as special administrator along with a summary of the results obtained, as an aid in determining the reasonableness of fees. On remand, the court may also consider Mr. Kovacevich's request for fees generated after the initial $20,000 award.

## APPELLATE FEES

Under RCW 11.96A.150, we have discretionary authority to award attorney fees from estate assets. Although they did not request attorney fees from the superior court, the Gardee heirs have requested fees on appeal. In reviewing the Gardees' request, we note that the estate is insolvent, there are numerous outstanding creditors, and probate has not yet been closed. In addition, the matters on appeal are not fairly characterized as frivolous. Given these circumstances, we decline to award fees against the estate.

CONCLUSION

We affirm the order disbursing the *Cobell* settlement funds to Mr. Comenout's heirs. We remand on the issue of Mr. Kovacevich's initial interim attorney fee request. Unless all interested parties agree otherwise, the superior court shall enter written findings of fact and conclusions of law to support any fee award. The superior court may also consider additional requests for fees and costs as necessary for the finalization of probate.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, A.C.J.
Pennell, A.C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Fearing, J.

13